THE STATE INSURANCE COMPANY, PLAINTIFF IN ERROR,
v. HENRY F. MAACKENS, DEFENDANT IN ERROR.

1. On a policy against loss by fire, issued to the owner of the premises,
   with an entry on the face of the policy, "Loss, if any, payable to M.,
   as his interest may appear," signed and approved by the agent of the
   insurance company, an action may be maintained by the person to
   whom the loss is made payable, as on a contract with him to pay him
   according to the terms of such appointment.
2. The person with whom the insurer so contracts, holds subject to the
   conditions of the policy, and under a liability to have his rights de-
   feated by a breach of the conditions of insurance by the insured, but
   nevertheless he takes under a contract with the insurer of its own
   making.
3. If suits be pending both by the insured and by the person to whom the
   loss is made payable, the courts, in virtue of their equitable control
   over actions, can so control the litigation that it may not be made
   vexatious.
4. Receiving preliminary proofs without objection, and failure to object
   after a reasonable time, or refusal to pay on other grounds, is evidence
   of a waiver of the time of furnishing the preliminary proofs, and of
   defects therein.
5. Under a policy containing conditions that "if the policy is made pay-
   able to a third party, or is held as collateral security, the proof of loss
   shall be made by the party originally insured," and that "the loss
   shall be paid sixty days after due notice and proofs of the same by the
   assured, shall have been received," the proofs are required to be made
   by and in the name of the assured, though the whole insurance money
   is due the person to whom the loss is made payable, and the sixty
   days will be reckoned from the delivery of such proofs.
6. A denial of all liability on the policy, and peremptory refusal to pay
   under any circumstances, is also a waiver of the right of the insurer
   to have the stipulated time before suit is commenced, and an action
   may thereupon be commenced at once. The plaintiff will be entitled
   to the benefit of such waiver, although, if he had delayed sixty days
   after such refusal, the action would have been barred by the limitation
   clause in the policy.
7. The conditions in a policy of insurance with respect to the remedy of
   the insured on the policy, derive their efficacy entirely from the con-
   tract. They create restrictions on his right to redress for the benefit
   of the insurer, which do not exist by the general law, and are to be
   construed strictly.
8. Under a condition that "the assured, if required, shall submit himself
   to an examination under oath," mere informal conversations or decla-
   rations by the officers of the company that they desire to have such

examination, will not impose that duty on the insured. The demand for an examination must be made with such clearness and distinctness that the party shall be fully informed that the company mean to insist upon having it.

In error to the Supreme Court.

This was an action on a policy of insurance against loss by fire, issued by the plaintiffs in error.

The case was tried at Hudson Circuit, and resulted in a verdict for the plaintiff below—Maackens. Judgment having been entered on the verdict, a writ of error was sued out, and errors assigned on the charge of the judge.

For the plaintiff in error, *Collins.*

For the defendant in error, *A. T. McGill.*

The opinion of the court was delivered by

DEPUE, J. The policy was issued to one Gustav Kethel, the owner of the premises, in the sum of $1600. Maackens held a mortgage on the property for $1200. An entry on the face of the policy, " Loss, if any, payable to Henry F. Maackens, as his interest may appear," was signed and approved by the agent of the company. After the fire, the mortgagee purchased the mortgaged premises on a foreclosure of his mortgage. Crediting the amount realized from the sale, the balance due the mortgagee at the time was $906.20, which was a trifle less than the value of the building as shown at the trial. The plaintiff had a verdict for that sum, the judge having ruled that he could only recover the amount due him on the mortgage.

Kethel has not brought any action on the policy, for the protection of any interest he might have had, and his right to sue is now barred by the limitation clause in the policy.

The entry on the face of the policy was not an assignment. It was a mere direction in advance as to the mode of payment, which, when made, is performance of the principal

contract with the insured. *Martin* v. *Franklin Insurance Co.*, 9 *Vroom* 140.

In *Martin* v. *The Franklin Insurance Co.*, it was held that the owner of the premises to whom the policy was issued, having still an insurable interest to be protected by the policy, notwithstanding such direction, might sue on the policy in his own name, and recover the entire loss, the rights of the appointee being protected by a payment into court in case of a recovery. This principle is peculiarly applicable to cases where the appointment is, in fact, as a collateral security for a debt of the insured which is liable to be diminished by payments, or increased by the addition of interest unpaid, and the direction, as in this case, is to pay as the interest of the appointee may appear.

This case presents the question, whether the person in whose favor such direction is made, may sue in his own name, where it has the approval and consent of the company, acting through an agent having authority to enter into contracts in its behalf. We think he may, when the consent of the insurer, taken in connection with the appointment of the insured, amounts to a contract with the person to whom the money is directed to be paid, to a promise to pay him on the happening of the event on which the insurance money is payable.

The assured cannot impose upon the underwriter any responsibility without his consent, and therefore, as a general rule, the action must be in the name of the insured ; but, if the underwriter has, with the consent of the assured, agreed to make himself liable to a third person, the latter may take proceedings in his own name to enforce payment. An assignment of the whole interest by the assured, which has been consented to by the underwriter, is equivalent to a new promise by the latter to be answerable to the assignee, and he may bring an action thereon in his own name. 1 *Phillips on Ins.* 58 ; *Flanagan* v. *Camden Mutual Ins. Co.*, 1 *Dutcher* 508 ; *Phillips* v. *Merrimack Mutual Ins. Co.*, 10 *Cush.* 350.

The clause in a policy, " Loss, if any, payable to A. B.,"

when expressly assented to by the company by an entry on the policy, or its insertion in the body of the instrument, is equivalent to a promise to pay, according to its terms. Such, manifestly, is the intention of the parties, and such must be the legal effect of the transaction. Upon a direction in the policy in this form, assented to by the insurer, the person in whose favor it has been made, has been allowed to sue, as on a promise to him to pay, in pursuance thereof. *Motley* v. *Manufacturers' Ins. Co.*, 29 *Me.* 337 ; *Ins. Co.* v. *Chase*, 5 *Wall.* 509 ; *Barrett* v. *Union Mutual Ins. Co.*, 7 *Cush.* 175 ; *Lowell* v. *Middlesex Mutual Ins. Co.*, 8 *Ib.* 131 ; *Loring* v. *Manufacturers' Ins. Co.*, 8 *Gray* 28 ; *Grosvenor* v. *Atlantic Fire Ins. Co.*, 17 *N. Y.* 391 ; *Frink* v. *Hampden Ins. Co.*, 45 *Barb.* 384.

The same principle will apply where the interest of the third person, which the insurer agreed to protect, is not equal to the whole interest of the insured in the policy, or, as in this case, is such interest as " may appear." Upon a valued policy of insurance on goods for a voyage to market, with a stipulation that a portion of the premium should be returned if landed at a specified port, it was held that the right of the insured to recover on the contract of indemnity, in case of a loss, might be severed from his right to a return of part of the premium paid, so that his assignees of the right to recover on a loss might recover therefor, although the right to a return of a portion of the premium paid remained in the assured, and passed to his assignee in bankruptcy. *Castelli* v. *Boddington*, 1 *E. & B.* 66. A like severance or apportionment occurs where the insurer agrees to be responsible to a third person for an *aliquot* or ascertainable part of the insurance money. The person with whom the insurer so contracts, undoubtedly holds subject to the conditions of the policy, and under a liability to have his rights defeated by a breach of the conditions of insurance by the insured ; but, nevertheless, he takes under a contract with the insurer of his own making. Upon that contract he should be permitted to pursue his remedy in the same manner in which contracts

with parties are enforceable. No injury can result thereby to the insurer. Every defence may be made in a suit prosecuted in the name of the beneficiary which would be available in an action in the name of the insured ; and if suits by both parties be pending, the courts, in virtue of their equitable control over actions, may so control the litigation that it may not be made vexatious. Under such circumstances, whether the action be in the name of the insured, for the use of the appointee, or in the name of the latter, is merely a matter of form.

The fire occurred November 26th, 1874. Notice thereof was given by the plaintiff, by informing the president at the office of the company, immediately after the fire. This was sufficient notice. If knowledge of the fire be in fact communicated, the courts will not be particular as to the form in which it is done, nor by whom, or how notice is given. A verbal notice of loss is sufficient, no other being stipulated for. 2 *Phillips on Insurance* 471 ; *Roumage* v. *Ins. Co.*, 1 *Green* 110. If not strictly in accordance with the contract of insurance, the informality will be waived by the failure to object to its form, and making objection to payment on other grounds. *Francis* v. *Ins. Co.*, 1 *Dutcher* 78.

The first preliminary proofs were made out in the name of the plaintiff, on the 13th of December, 1874. They were sworn to by the plaintiff, and the certificate of the proper magistrate annexed on the 13th of February, 1875, but they were not presented to the company until the 20th of February. The conditions of the policy provide that, " if the policy is made payable in case of a loss to a third party, or is held as collateral security, the proof of loss shall be made by the party originally insured." Proof in the name of the plaintiff was not in compliance with this condition, and the company properly objected to it for this reason.

Proof by and in the name of Kethel was obtained December 23d, 1874. It was certified to on the 19th of February, but not delivered to the company until March 30th. The conditions require the proofs to be rendered as soon after the

loss as possible. By this is meant, within a reasonable time. *Columbia Ins. Co.* v. *Lawrence,* 10 *Peters* 507.

Neither of these proofs was presented in compliance with the policy. The proof by Kethel, which was required by the conditions of the policy, was not delivered until upwards of four months after the fire. It was defective, also, in that the certificate annexed was not made by a magistrate *nearest* the place of the fire. To obviate this difficulty, and remove this obstacle in the way of a recovery, the plaintiff relied on a waiver.

If the underwriter means to insist on defects in the preliminary proofs, he should apprise the assured of such objection, or put his refusal on that ground. Receiving preliminary proofs without objection, and failure to object after a reasonable time for examination, or refusal to pay on other grounds, is evidence of a waiver. *Busch* v. *Humboldt Fire Ins. Co.,* 6 *Vroom* 429; *Jones* v. *Mechanics Fire Ins. Co.,* 7 *Vroom* 29. Under a fire policy requiring the insured, in case of a loss, to produce a certificate of a magistrate or clergyman nearest the place of fire: if the insured produces the certificate of a magistrate *near,* but not *nearest* the place of the loss, the defect in the certificate is waived by a refusal to pay not on that ground. *O'Niel* v. *The Buffalo Fire Ins. Co.,* 3 *Comst.* 122. Receiving notice and preliminary proof, and acting upon them without objecting to their form or time of service, and refusal to pay on other grounds, is evidence of a waiver of formal objections. *Bumstead* v. *The Dividend Mutual Ins. Co.,* 2 *Kernan* 81. Indeed, any conduct on the part of the company or its agents, with respect to their liability on the policy, which may reasonably be supposed to have induced the claimant to believe that the time for delivering the proofs would not be relied on by the company, is competent evidence of a waiver of strict adherence to time in the presentation of proofs. There was some evidence that tended in that direction. After notice of the loss was given, the officers expressed the opinion that there was fraud in the transaction on the part of Kethel. The plaintiff was negotiating with the company for the pay-

ment of his interest in the loss, without regard to Kethel's interest. The proof of loss made in the plaintiff's name was received without any objection, except that it was not made by Kethel. That proof was served on the 20th of February. The plaintiff was told at that time that Kethel must furnish the proof of loss; that the plaintiff, as mortgagee, could not do it. That proof, when obtained, was presented and received without objection. After that the plaintiff had several interviews with the officers and agents of the company, at one of which the president declined to pay, " unless it was a proper fire." And the agent of the company had communications on the subject with the plaintiff, and also with his attorney, by personal interviews and by letter. The letter to the attorney was written by the agent, at his own instance, to ascertain if he was the attorney of Kethel, and getting no reply, he called at the office of the attorney and had an interview with him on the subject of this loss. That interview was on the 20th of April, 1875—the day on which the suit was brought. The attorney testifies that at that time the agent declared, unequivocally, that the company would not pay nor rebuild; and that he said, on its being suggested that the plaintiff should sue, " Well, commence your suit, we wont pay the loss." On some of these points there was counter proof on the defendants' behalf, but there was no testimony in the cause, that objection was made specially to the time when the proper proofs were delivered. On writ of error we cannot undertake to determine the weight or credibility of evidence. If there was evidence tending to establish a waiver, the question was for the jury, and the judge properly submitted it to them.

The suit was commenced on the 20th of April, 1875, immediately after the interview at the office of the defendant's attorney, above referred to. The conditions provide that the loss shall be paid " sixty days after due notice and proofs of the same, made by the assured, shall have been received," &c. The time must here be reckoned from the delivery of the proofs in Kethel's name, and not from the presentation of the

proofs by and in the name of the plaintiff. *Kimball* v. *Hamilton Fire Ins. Co.*, 8 *Bosw.* 495. On a strict adherence to the tenor of the policy, the action was prematurely brought, and the objection on that ground would be fatal, unless the company, by its own conduct, was deprived of the right to have the further time.

A denial of all liability on the policy, and peremptory refusal to pay under any circumstances, is also a waiver of the right of the company to have the stipulated time before any suit is commenced. Upon such denial of liability, and refusal to pay, an action may be commenced at once. *Norwich and N. Y. Trans. Co.* v. *Western Mass. Ins. Co.*, 6 *Blatch. C. C. R.* 241 ; *S. C.*, 34 *Conn.* 561 ; *Allgree* v. *Maryland Ins. Co.*, 6 *Harr. & J.* 408 ; *Phillips* v. *Protection Ins. Co.*, 14 *Mo.* 220 ; *Baltimore Fire Ins. Co.* v. *Loney*, 20 *Md.* 20 ; *Ætna Ins. Co.* v. *Maguire*, 51 *Ill.* 342 ; *Cobb* v. *Ins. Co.*, 11 *Kansas* 93.

We think the cases cited establish the correct principle as applicable to stipulations of this character in contracts of insurance. The insured having given notice and presented his preliminary proofs, or the performance thereof being waived, has done all that was required by the contract, and has made out a *prima facie* case. Thenceforth the burden is on the insurers. This stipulation was inserted for their benefit—to enable them, before they would be required to pay, to inquire and investigate with a view to determine whether they would pay. If they had made investigation, and satisfied themselves what course to pursue, and resolved not to pay, and so declared, "it would," to adopt the language of Shipman, J., in *Norwich and New York Trans. Co.* v. *Western Mass. Ins. Co.*, "be absurd to say that they still retain the right to have sixty days within which to pay a loss which they declared that they would not pay at any time, nor under any circumstances."

The court so charged, leaving to the jury the question of fact whether there had been such denial and refusal. The charge was correct.

It was insisted that the doctrine of waiver above stated, though correct as a general rule, was not applicable to this case. The circumstance that was urged as taking this case out of the general rule was, that the policy contained a limitation clause, barring the suit if no action should be commenced within six months next after the loss occurred. A delay of sixty days, after the proof of Kethel was delivered, before bringing suit, would extend beyond the six months' limitation. The argument was, that if the plaintiff delayed the sixty days, he would be defeated by the six months clause, and that the waiver should only be effectual to put the plaintiff in the situation he would be in if he had sued at the end of the sixty days, and therefore the waiver was inoperative.

The conditions in a policy of insurance with respect to the remedy of the insured on the policy, derive their efficacy entirely from the contract. They create restrictions on his right of redress for the benefit of the insurer, which do not exist by the general law against other parties to contracts. Conditions imposing burdens on one party for the benefit of the other, are to be construed strictly. *Cathin* v. *Springfield Fire Ins. Co.*, 1 *Sumner* 434. A condition that the insured shall sue within a limited time, operates as a forfeiture, and therefore is to be construed strictly. *Ripley* v. *Ætna Ins. Co.*, 29 *Barb*. 552. To give effect to such a stipulation in cases not within its terms, would be to aid in a forfeiture, which the law never permits, except in cases where the forfeiture arises under the exact words of the instrument. These conditions severally are like conditions at common law—when once gone, they are gone forever—and neither law nor equity will aid in restoring them, or deprive the other party of the benefit derived from their extinguishment. Whatever advantage he has derived from the waiver of one condition by the other party, he will not be deprived of by setting up another, to which, under other circumstances, he might be subjected.

The policy furthermore provided that the insured *shall, if required*, submit himself to an examination under oath. The insured is not required to tender himself for examination. He is only under obligation to do so if required by the com-

pany. In this proceeding the company take the initiative. Mere informal conversations or declarations that they desire to have such examination, will not impose that duty on the insured. The demand for such examination must be made with such clearness and distinctness that the party shall be fully informed that the company mean to insist upon having it.

In this case, the demand relied on was that alleged to have been made of the plaintiff, that Kethel should be produced for examination. Inasmuch as he is the party prosecuting on the policy, in his own right and for his sole benefit, a demand properly made on him would be sufficient to impose on him the duty of procuring Kethel for examination.

The controversy was whether what occurred with him amounted to requiring the examination. The company's agent testified that he told the plaintiff he wanted the proofs of loss as soon as possible, and, as soon as they were received, he wanted to examine Kethel under oath. He further testified, at the interview on the 20th of April he asked plaintiff where Kethel could be found, and that he again expressed a desire to examine him under oath. The plaintiff testified that the agent once told him he wanted Kethel for examination. The remark seems to have had so little effect on the plaintiff that he never told Kethel of it.

The evidence did not make this matter entirely clear, and was somewhat contradictory. The judge very properly left it to the jury to say whether any steps were taken by the company with a view to have Kethel examined—whether any information was brought home to him, or efforts made to that end—and charged that if efforts to obtain the examination were made in good faith, no right of action would arise until such examination was submitted to.

There is no error in the proceeding below, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, GREEN, LILLY, WALES—11.

*For reversal*—DIXON—1.