131 N.J. Super. 450 (1974)
330 A.2d 389
MARY G. BACON AND ROBERT H. BACON, PARTNERS TRADING UNDER THE NAME OF BACON & GRAHAM, PLAINTIFFS,
v.
THE AMERICAN INSURANCE COMPANY, A CALIFORNIA CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Supplemental Opinion November 10, 1974.
Decided September 13, 1974.
*453 Mr. Robert H. Altshuler for plaintiffs.
Mr. Richard D. Catenacci for defendant (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
ROSENBERG, J.S.C.
This matter comes before the court on cross-motions for summary judgment. Argument was heard on June 28, 1974 and supplemental argument on September 13, 1974, at which time the court rendered its opinion from the bench, granting the motion as to defendant and denying it as to plaintiffs. Notice of appeal was served on November 6, 1974. This supplemental opinion is filed in response to that notice pursuant to R. 2:5-1(b) to aid the appellate court in its determinations.
There is no controversy as to the material facts involved, thus making the matter ripe for summary disposition. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954). Plaintiffs are in the industrial paper business as distributors. Defendant is a California corporation authorized to transact an insurance business in New Jersey. On June 11, 1972 defendant issued to plaintiffs a comprehensive liability insurance policy. Such policy was in force on September 28, 1973 when Union Textile Co., a textile printing concern and customer of plaintiffs, suffered property damage allegedly caused by defects in steaming paper sold and delivered by plaintiffs. This paper was used by Union in a steaming process whereby printed color is locked in fast on the textile fabric. Apparently the paper sold to Union contained spots which were transferred to the material during the steaming process, *454 thus making the cloth valueless. As a result of its loss Union asserted a claim against plaintiffs which was settled by Union withholding $16,755.80 from amounts which it owed plaintiffs, such an offset being reflected in a letter dated November 30, 1973 from Union's president to plaintiffs, and in a letter accompanying a check sent to plaintiffs by Union on January 16, 1974. Plaintiffs sought to recover this amount under its liability policy but defendant, after investigation, denied liability on the claim in a letter to plaintiffs dated December 14, 1973. It is this denial of liability and refusal to pay the claim that prompted plaintiffs to institute suit.
The legal arguments advanced by both parties are straightforward. Plaintiffs contend that they became legally obligated to Union at the time that the cloth was damaged; that defendant therefore became liable to plaintiffs at that time by the terms of the liability policy, and that by denying liability under the policy defendant is barred by waiver and estoppel from setting up terms of that policy as a defense to plaintiff's claim. Plaintiffs also attack parts of defendant's answer as defective under R. 4:5-4 and 4:5-8(b). Defendant argues that plaintiffs did not become legally obligated to pay damages to Union and that defendant, therefore, was not liable under the policy; that plaintiffs have not complied with the conditions of the policy and are barred from commencing action against the insurer, and that defendant has not waived any defenses under the policy and is not estopped from denying liability and raising terms of the policy in defense. The arguments of both parties go to their respective responsibilities under the liability contract, and thus involve issues of the insurer's obligation to make the insured whole, and the insured's duty to comply with terms and conditions of the policy.
Plaintiff's attack on the sufficiency of defendant's answer can be readily dealt with. Under R. 4:5-4 affirmative defenses must be pleaded "specifically and separately"; under R. 4:5-8(b) denial of performance of conditions *455 precedent must be made "specifically and with particularity." Plaintiffs assert that defendant's third, fourth, fifth and sixth separate defenses are not sufficiently precise under these rules and therefore should be stricken. The purpose in R. 4:5-4 of requiring that certain defenses be pleaded affirmatively is to avoid surprise. Faul v. Dennis, 118 N.J. Super. 338, 342 (Law Div. 1972). This same rationale would seem applicable to the requirement of specificity in the pleadings, particularly in view of the expression in 110-112 Van Wagenen Ave. Co. v. Julian, 101 N.J. Super. 230, 239 (App. Div. 1968), that the "intent and spirit of the rules" is to put adverse parties on notice of claims to be met. It cannot be said that the third, fourth, fifth and sixth separate defenses as asserted in the answer caused plaintiffs unfair surprise or failed to apprise them of the claims asserted by defendant. To strike pleadings in view of this would be to give effect to technical niceties of pleading over the spirit and purpose of the rules, thereby obfuscating the intent of the rules themselves. This being the case, the objection raised by plaintiffs must be rejected.
In its sale of steaming paper to Union plaintiffs made implied warranties of merchantability and fitness of purpose to the buyer pursuant to N.J.S.A. 12A:2-314 and 2-315. Plaintiffs also contend that the goods were sold under an express warranty. N.J.S.A. 12A:2-313, but as no proof is offered of such a warranty it is not before the court for consideration. Exclusion (a) of the policy expressly provides that losses occasioned by breach of a warranty of fitness or quality of the insured's products is within the coverage of the policy. However, although the harm suffered may be within the coverage liability for payment by the insurer under the coverage is controlled by other provisions of the insurance contract, notably Part I: "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * Coverage B. property damage." (Emphasis supplied). On the facts of this case plaintiffs contend that as a result of Union's loss *456 they became legally obligated to Union for damages under N.J.S.A. 12A:2-714 and 2-715; that pursuant to N.J.S.A. 12A:2-717 and in light of this obligation Union properly withheld payment as an offset for the damage suffered, and that therefore defendant was required under Coverage B to pay such damages. This theory of liability necessarily rests upon the degree to which the above-cited statutes establish plaintiffs' legal obligation to pay Union.
N.J.S.A. 12A:2-714, 2-715 and 2-717 are provisions of the Uniform Commercial Code dealing with buyer's remedies for breach of contract by seller after the buyer has accepted the subject goods. These sections are applicable insofar as seller (plaintiffs) did breach their implied warranties to buyer (Union). Both N.J.S.A. 12A:2-714 and 2-715 deal with buyer's measure of damages. N.J.S.A. 12A:2-717 provides the buyer with an alternative means of recovery through recoupment. To assert its remedies under N.J.S.A. 12A:2-714 and 2-715 the buyer must notify the seller within a reasonable time after he discovers, or should have discovered, the breach. N.J.S.A. 12A:2-607(3)(a); Buff v. Giglio, 124 N.J. Super. 94, 98 (App. Div. 1973). Here it appears that Union notified plaintiffs of the damage to its fabric, and thus of the defect in the steaming paper, as soon as the damage was observed. Although no proof is offered as to the nature of the handling and use of such paper to indicate whether this was, in fact, a reasonable time for such notification, it seems that this substantially complied with N.J.S.A. 12A:2-607(3) (a) and therefore entitled Union to damages as provided in N.J.S.A. 12A:2-714 and 2-715. Union could also deduct these damages from money owed on the same contract under N.J.S.A. 12A:2-717, providing the seller was properly noticed. The November 30 letter from Mr. Pink, president of Union, to plaintiff, and the earlier conversations between them which occurred concerning Union's loss, appears to suffice as to the notice requirement. However, no proof is offered that the amount withheld was from the contract price for the shipment of the defective paper, a prerequisite *457 for applicability of N.J.S.A. 12A:2-717. Absent such proof, it is impossible for the court to conclude whether Union rightly recouped its loss under N.J.S.A. 12A:2-717. This evidentiary defect could be significant if plaintiffs' argument was viable that such recoupment satisfied a legal obligation, but as the following discussion indicates, it is the court's view that application of N.J.S.A. 12A:2-714, 2-715 and 2-717 does not establish that plaintiffs were "legally obligated" for damages as that term is used in the policy.
While the term "legally obligated" is undefined in the policy or by our courts, courts in other jurisdictions have defined the term as used in liability policies to signify existence of a legal liability. Liberty Bldg. Co. v. Royal Indemn. Co., 177 Cal. App.2d 583, 2 Cal. Rptr. 329 (D. Ct. App (1960); Stubblefield v. St. Paul Fire & Marine Ins. Co., 98 Or. Adv. Sh. 345, 517 P.2d 262 (Or. Sup. Ct. 1973). Our courts have alluded to this definition. In Nakonieczny v. Commonwealth Cas. Co., 111 N.J.L. 137 (Sup. Ct. 1933), the court, in distinguishing between liability and indemnity contracts, said (at 140): "But, where the policy is a contract for protection against liability, the insured may turn to it for relief as soon as his liabiilty has become legally fixed and established, although he has not suffered actual loss, as by being required to discharge such liability." (Emphasis supplied). The import of this language is that the term "legally obligated" as used in Part I connotes an establishment of legal liability for payment of damages. Accord, Viddish v. Hartford Acc. & Indem. Co., 41 N.J. Super. 221, 226 App. Div. 1956). The test of this liability is not the existence of a remedy in the buyer against the seller under the relevant Code sections, but a determination of responsibility for satisfying such a remedy. There is a clear implication in the language of Part I that payment by the insurer was predicated upon an adjudication of the insured's liability to pay "damages." The fact that Union opted for recoupment under N.J.S.A. 12A:2-717 does not suffice in determining *458 plaintiffs' liability for the loss, nor does it vitiate the need under the policy for such a determination. Absent the presentation of proofs in a court of competent jurisdiction and a finding by the court or jury of liability, it cannot be said that the seller is "legally obligated" to pay damages. Annotation, "Insurance against injuring property or person of third person as liability or indemnity insurance," 37 A.L.R. 644 (1925). The language in Part I is clear and unambiguous and is not conditioned upon the procedural context within which the injured party asserts its remedy against the insured. Under such circumstances it is not for the court to alter the contract of the parties, but rather to give that contract effect. Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 525 (1963); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960). While adjudication of liability in a recoupment situation involves a different procedure than the more usual circumstance where the injured party simply sues the insured, it does not make adjudication impossible. As defendant suggests, in such a situation it may be appropriate for the buyer to commence action against the seller for monies withheld, thus providing a forum within which issues of liability can be decided. In this way all other relevant parties, notably in this case the manufacturer of the defective paper, could be joined to arrive at a final establishment of liability. As it is, this case has not reached a point at which it can be said that plaintiffs are "legally obligated" to pay damages to Union and that defendant is, therefore, liable to plaintiffs to cover them for such a payment. In view of this, it is the court's conclusion that defendant is not liable to pay plaintiffs under the terms of the instant comprehensive liability policy.
Quite apart from any issues of liability is the question of the timeliness of plaintiffs' action against its insurer. The crux of defendant's argument in support of its motion for summary judgment is that plaintiffs are barred by Condition No. 5 of the policy from commencing suit against the insurer. Condition No. 5 reads in relevant part:
*459 5. Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.
The language of this so-called "no action" clause is express and ambiguous, clearly setting out conditions precedent to the insured's right of action against its carrier. Thus, the court's inquiry is limited to a determination of the validity and applicability of Condition No. 5 in the instant case and its effect thereto.
It is well-settled that in the absence of waiver or estoppel the insurer may assert substantial nonperformance of any condition as a defense to any proceeding against it on the policy. Miller v. Zurich Gen. Acc. & Liab. Ins. Co., 36 N.J. Super. 288, 294 (App. Div. 1955); United Natl. Indem. Co. v. Sangiuliano, 38 N.J. Super. 400, 402-3 (Law Div. 1955); Bass v. Allstate Ins. Co., 77 N.J. Super. 491, 495 (App. Div. 1962). Substantively our courts have previously dealt with "no action" clauses. In Condenser Service, etc., Co. v. American etc. Ins. Co., 45 N.J. Super. 31 (App. Div. 1957) the court said in describing a "no action" clause virtually identical to the one in the instant policy:
The basic purposes of this language are (1) to avoid joinder of the insurance company by the injured person in the damage action against the insured, and (2) to prevent suit against the carrier by the insured person or the insured until the damages have been fixed by final judgment after trial of that action or by proper agreement. [at 41; emphasis supplied]
Thus it emerges that prior to suing its carrier the insured must have in hand a final judgment of damages or a settlement agreement of "proper" form, that is, one involving the insurer as well as the claimant. In the event that the insured does not have either judgment or settlement and nonetheless commences suit against the insurer, the carrier can set up the failure to comply with the condition as a defense.
*460 Applying these principles to the facts of this case it is clear that plaintiffs' action is barred by Condition No. 5 of the policy. To date there has been no judgment returned against insured nor, according to the proofs submitted, has there been any settlement involving the insured, the insurer and the claimant. Absent such proceedings, Condition No. 5 is not complied with, and without such compliance action against defendant by plaintiffs is barred.
As noted previously, the one caveat to the raising of conditions precedent as defenses is that there be no waiver or estoppel. Plaintiffs here contend that defendant is subject to such a bar because of its disavowal of liability under the policy. A review of the facts of the case and the authorities for the caveat undermine this contention. In order for a denial of liability to constitute a waiver of the right to raise a condition of the policy, such denial must be wrongful and unequivocal. State Ins. Co. v. Maackens, 38 N.J.L. 564 (E. & A. 1876); Evans v. Farmers' Reliance Ins. Co., 110 N.J.L. 159 (E. & A. 1933); Capece v. Allstate Ins. Co. v. State Farm, etc., Ins. Co., 86 N.J. Super. 462 (Law Div. 1965); N.J. Mfrs. Ind. Ins. Co. v. U.S. Cas. Co., 91 N J. Super. 404 (App. Div. 1966). In the instant case the insurer did not wrongfully and unequivocally deny liability. Rather, it stated that as to the specific claim asserted by Union, it had no liability, a statement which was accurate under the terms of Part I of the policy. As to the question of an estoppel, plaintiffs have failed to show facts upon which such an argument would rely, namely, a misleading or inaccurate repreesntation of material facts with an intent to induce reliance upon which plaintiffs did, in fact, rely to their detriment. Musconetcong Iron Works v. D.L. & W. Ry., 78 N.J.L. 717 (E. & A. 1910); Feldman v. Urban Commercial Inc., 70 N.J. Super. 463 (Ch. Div. 1961). There is no basis upon which defendant insurer should be forestalled from raising Condition No. 5 as a defense to plaintiffs' action. Since Condition No. 5 of the policy is applicable and plaintiff has failed to comply with its terms, it constitutes an absolute *461 defense to plaintiffs' suit at this time. Such being the case, judgment is entered in favor of defendant American Insurance Co. and against plaintiffs.