727 A.2d 1030 (1999)
320 N.J. Super. 509
CREST-FOAM CORPORATION, Plaintiff-Respondent,
v.
AETNA INSURANCE COMPANY, American Insurance Company, CNA Insurance, Continental Casualty Company, Continental Insurance Company, Employers Mutual Liability Insurance Company of Wisconsin, Federal Insurance *1031 Company, Fireman's Fund Indemnity Corporation, Greater New York Mutual Insurance, Home Insurance Company, Insurance Company of North American, Lexington Insurance Company, New Jersey Manufacturers Insurance Company, North River Insurance Company, Puritan Insurance Company, St. Paul Fire and Marine Insurance Company, and John Doe Insurance Companies 1-100, Fictitious Companies, Defendants, and
Hartford Accident and Indemnity Company, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1999.
Decided April 29, 1999.
*1032 Michael F. O'Neill, Bedminster, for defendant-appellant Hartford Accident and Indemnity Company (Purcell, Ries, Shannon, Mulcahy & O'Neill, attorneys; Mr. O'Neill, of counsel; Mr. O'Neill, Kathleen M. Quinn, Morristown, and Donna Stephan-Nolan, on the briefs).
Stephen N. Dermer, Roseland, for plaintiff-respondent Crest-Foam Corporation (Lowenstein, Sandler, attorneys; Mr. Dermer, of counsel; Mr. Dermer, Amy C. Grossman, West Orange, and Robert L. Lombardi, Roseland, on the briefs).
Before Judges STERN, LANDAU and BRAITHWAITE.
The opinion of the court was delivered by STERN, P.J.A.D.
We granted leave to appeal to consider whether plaintiff's declaratory judgment action, seeking coverage for environmental clean-up expenses, is time barred because it was commenced more than six years after plaintiff's execution of an Administrative Consent Order (ACO) with the New Jersey Department of Environmental Protection (NJDEP) requiring plaintiff to develop a plan to evaluate and clean-up contamination at its industrial site.[1] We hold that the action is not time barred. Accordingly, we affirm the order denying summary judgment.
I.
Plaintiff Crest-Foam manufactured and processed polyurethane and polyether foam in a facility in Moonachie, New Jersey, from 1965 to 1986. The facility consisted of three buildings. On December 1, 1986, Crest-Foam entered an agreement to sell all of its outstanding stock to Leggett & Platt Foam Acquisition Company (L & P) which "triggered" application of the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 to -14 then in effect.[2] In order to comply with ECRA, Environmental Resources Management Inc. (ERM) was retained to conduct a comprehensive environmental site audit of the facility. An initial report by ERM, dated November 25, 1986, indicated that the site "may have potential environmental problems. Potential long-term environmental problems could stem from ground water contamination by the dry wells and the underground `salvage' tank." ERM prepared a second report embodying its Probable Opinion of Remediation Cost, dated December 24, 1986, also indicating that there may be ground water contamination beneath the site. The report stated:
Subsurface investigation and sampling program revealed significant contamination of ground water and soils in the area adjacent to the drum storage area at Building No. 1....
Ground water contamination at Building No. 1 is assumed to have moved beyond the property boundaries and a 10 year treatment effort is required.
The report also indicated that additional subsurface investigation would be necessary to determine the extent of the contamination. The estimated cost for remediation ranged from $900,000 to $1,600,000. Under *1033 ECRA, plaintiff was required to conduct an environmental investigation and take any necessary remedial action as a condition of the sale. N.J.S.A. 13:1K-9 (repealed).
On December 30, 1986, plaintiff entered into an ACO with the NJDEP. The ACO stated that Crest-Foam "shall initiate, complete, and submit to NJDEP the results from any NJDEP-approved Sampling Plan" and Crest-Foam "shall implement any NJDEP-approved Cleanup Plans in accordance with the approved time schedule or defer implementation of all or part of the Cleanup Plan(s) subject to NJDEP approval...." As part of the ACO, plaintiff was required to provide "financial assurance" in the amount of $1,000,000 subject to amendment upon NJDEP approval of a cleanup plan.
Pursuant to the ACO, plaintiff retained First Environment Inc. as its clean-up plan consultants, and submitted a sampling plan to NJDEP for approval. On March 15, 1988, NJDEP issued a conditional approval of the plan. Plaintiff thereafter conducted soil sampling, installed five shallow ground water wells and sampled existing monitoring wells. A report containing ECRA Sampling Plan Results was filed with NJDEP on September 1, 1988. According to the sampling plan report, there was both "soil[ ] and groundwater" contamination outside two of the buildings.
As of May 1996, a "final" clean-up plan for the site had not been approved by NJDEP. In June 1995, NJDEP required plaintiff to analyze whether any contamination had "spread off-site." NJDEP requested further study of the issue before a clean-up plan could be approved. Development of a remediation plan thereafter continued, and cost estimates for cleanup ranged from $2,200,000 to $2,700,000.
In the interim plaintiff sought indemnification for the clean-up costs from its insurers. Defendant Hartford had issued four general liability policies covering the period May 1982 to May 1986. Each provided coverage of $1,000,000 for property damage. The basic terms of all four policies are the same, and provided that "the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage... to which this insurance applies, caused by an occurrence...." The policies define an "occurrence" as "property damage neither expected nor intended from the standpoint of the insured."
Each of the policies also contained a "no action" clause which provided:
No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.
On September 17, 1991, plaintiff notified Hartford that it was seeking coverage for cleanup costs at the site. Plaintiff's letter to Hartford stated:
[Crest-Foam] has been required by the New Jersey Department of Environmental Protection to address soil and groundwater contamination at its former facility in Moonachie, New Jersey. In order to comply with this requirement, Crest-Foam Corporation has incurred substantial costs and will continue to do so.
...
This letter is being sent to advise you of this loss and to request that you defend and indemnify Crest-Foam Corporation to the extent of its policy limits.
Hartford responded by letter dated September 25, 1991, indicating that it did not think the facts presented a "covered loss" but requested additional information. The letter requested the information "[i]n order to evaluate this claim you have made for coverage." The letter also stated "[t]his is to advise you that The Hartford is presently in the process of reviewing the claims against Crest Foam Corp .... to determine whether and to what extent the policies issued by The Hartford provide coverage for such claims."
On January 17, 1992, plaintiff provided Hartford with the additional information it had requested. On January 24, 1992, Hartford *1034 again responded by writing that it "did not consider this a covered loss" but again sought additional information to evaluate the issue. Hartford stated "[t]he information so far reviewed indicates that Crest Foam had knowledge of this problem in 1986 but did not notify Hartford until 9/21/91." The author also stated he was "extremely concerned that the late reporting has compromised Hartford's position."
After receiving no response to this request, Hartford wrote to plaintiff on October 9, 1992, again requesting information. Without receiving an express "denial" from Hartford, plaintiff filed this action in February 1993 seeking a "declaratory judgment" (count one) and, inter alia, a declaration of rights, "recovery" and indemnification based on "breach of contract" (count two).
In January 1996, Judge Marguerite T. Simon granted plaintiff partial summary judgment on the grounds that the ECRA clean-up costs were "`damages' for which plaintiff is legally obligated to pay" for purposes of coverage under the Hartford policies and because the ACO was not an obligation "voluntarily" assumed for purposes of a policy exclusion. Thereafter, Hartford moved for summary judgment in June 1996, on the basis that plaintiff's action was barred by the six-year statute of limitations. According to Hartford the claim was barred by plaintiff's failure to bring suit within six years of its discovery of ground water contamination and execution of the ACO. Judge Simon denied Hartford's motion "without prejudice." She found that the knowledge of ground water contamination in 1986 and the signing of the ACO were not sufficient to trigger the running of the statute of limitations.
Hartford renewed its motion for summary judgment in May 1998 based upon then recently decided case law to the effect that the insured's cause of action accrues when the insured discovers the contamination that is the basis for its claim. The motion was denied by Judge Martin J. Kole, who found that, although Hartford advised that it did not consider the claim a covered loss, "the request for additional information" "gave Crest-Foam a reasonable basis for assuming" that Hartford would reconsider its position. He concluded that the statute of limitations therefore "either tolled or should not be applied here as a matter of fairness and justice." Judge Kole further held that, in any event, the statute of limitations only begins to run when "the insurer declines to pay the insured's claim," and since Hartford did not deny coverage and "breach[ ] its insurance contract with Crest Foam by denying coverage" until it answered the declaratory judgment complaint, the action was not barred by the statute of limitations.
II.
In New Jersey, causes of action based on contractual claims must be brought within six years "after the cause of any such action shall have accrued." N.J.S.A. 2A:14-1.[3] The general rule is that the statute of limitations applicable to contracts governs insurance actions as well. Breen v. New Jersey Mfrs. Indemn. Ins. Co., 105 N.J.Super. 302, 309, 252 A.2d 49 (Law Div.1969), aff'd, 109 N.J.Super. 473, 263 A.2d 802 (App. Div.1970). Thus, "[a]bsent a provision in the insurance policy or an express statute to the contrary, the statute of limitations applicable to a suit on a policy of insurance" is six years. Walkowitz v. Royal Globe Ins. Co., 149 N.J.Super. 442, 448, 374 A.2d 40 (App. Div.), certif. dismissed, 75 N.J. 584, 384 A.2d 815 (1977). To that end, Hartford contends that the complaint is time barred because the action accrued at the latest in 1986 when the ACO was executed. Plaintiff, however, contends that, even if there was a known basis for coverage at that time, its "cause of action did not accrue until defendant breached its contractual obligation to pay for clean-up costs" and, in any event, the six-year period has been extended by the policy's "no action" clause. According to plaintiff, "[u]nder Hartford's `no action' clause, Crest-Foam is not entitled to file suit against Hartford until *1035 there is either a final judgment or an agreement setting forth the amount of damages against it." Defendant insists, however, "that the no-action clause is inapplicable on its face" because "[b]y its terms, the no action clause has no application except in situations where there are formal legal proceedings which will result in a final adjudication of the insured's obligation to pay `either by judgment ... after trial or by written agreement of the insured, the claimant and the company,'" and here there can "be no such final adjudication against Crest-Foam because its liability was established as a matter of law and because Crest-Foam voluntarily agreed to cooperate with NJDEP by signing the ACO without Hartford's consent."
Justice (then Judge) Francis has described the purpose of the so-called "no action" clause, such as the one at issue here, as follows:
The basic purposes of this language are (1) to avoid joinder of the insurance company by the injured person in the damage action against the insured, and (2) to prevent suit against the carrier by the injured person or the insured until the Damages have been fixed by final judgment after trial of that action or by proper agreement.

[Condenser Serv. & Eng'g Co., Inc. v. American Mut. Liab. Ins. Co., 45 N.J.Super. 31, 41, 131 A.2d 409 (App. Div.), certif. denied, 24 N.J. 547, 133 A.2d 395 (1957).]
Thus, the terms of the "no-action" clause are generally seen as "conditions precedent to the insured's right of action against its carrier," Bacon v. American Ins. Co., 131 N.J.Super. 450, 459, 330 A.2d 389 (Law Div.1974), aff'd, 138 N.J.Super. 550, 351 A.2d 771 (App. Div.1976), and "[i]n the event that the insured does not have either judgment or settlement and nonetheless commences suit against the insurer, the carrier can set up the failure to comply with the [no-action] condition as a defense." Ibid.
However, as Justice Francis further explained, the "no action" clause "was never intended to serve nor can it be construed to serve, the purpose of avoiding a declaration of rights when the insurer allegedly has repudiated the contract and declined to furnish an agreed defense of a covered damage action." Condenser Serv., supra, 45 N.J.Super. at 41, 131 A.2d 409. See also Kielb v. Couch, 149 N.J.Super. 522, 528, 374 A.2d 79 (Law Div.1977), in which the court noted that a "no action" clause "may not be utilized as a bar to a declaratory judgment action instituted to adjudicate issues of coverage and defense." Accord McNally v. Providence Washington Ins. Co., 304 N.J.Super. 83, 90-91, 698 A.2d 543 (App.Div.1997).
Here "the [d]amages have [not] been fixed by final judgment after trial ... or by proper settlement," Condenser Serv., supra, 45 N.J.Super. at 41, 131 A.2d 409, but the insured's rights can be adjudicated in a declaratory judgment action.[4] Moreover, the "no-action" clause prevents the defendant from asserting the statute of limitations as a defense to the claim for indemnification. In the absence of specific definitions in a policy, the words used by the insurer must be accorded their plain, ordinary and commonly understood meaning in order to fulfill the reasonable expectations of the insured, e.g., Property Casualty Co. of MCA v. Conway, 147 N.J. 322, 326-27, 687 A.2d 729 (1997); Morton Int'l Inc. v. General Accident Ins. Co. of Am., 134 N.J. 1, 27, 629 A.2d 831 (1993), cert. denied, sub. nom. Insurance Co. of N. Am. v. Morton Int'l, Inc., 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); Lansco, Inc. v. Dep't of Envtl. Protection, 138 N.J.Super. 275, 281-82, 350 A.2d 520 (Ch.Div.1975), aff'd, 145 N.J.Super. 433, 368 A.2d 363 (App.Div.1976), certif. denied, 73 N.J. 57, 372 A.2d 322 (1977), and defendant offers no reasonable meaning or construction of the "no-action" clause other than one that requires the insured to wait until the terms *1036 of the clause are satisfied before filing an action. On this record, those terms have not been met, so the statute of limitations cannot provide a defense to the action. See Kielb v. Couch, supra, 149 N.J.Super. at 529, 374 A.2d 79 (only after "termination of the third party action" against the insured and "the totality of his claim ... was ascertainable and his right of action complete" could the insured successfully "withstand a defense based upon the `no action' clause in the policy" so that the statute of limitations could pose no bar); Bacon, supra, 131 N.J.Super. at 458, 330 A.2d 389 (where, in interpreting a no-action clause in a dispute between the insured and the carrier, the court noted that "[a]bsent the presentation of proofs in a court of competent jurisdiction and a finding by the court or jury of liability, it cannot be said that the [insured] is `legally obligated' to pay damages"). See also Diamond Shamrock Chem. v. Aetna Cas. & Sur. Co., 258 N.J.Super. 167, 250-51, 609 A.2d 440 (App. Div.1992), certif. denied, 134 N.J. 481, 634 A.2d 528 (1993); cf. McNally v. Providence Washington Ins. Co., supra, 304 N.J.Super. at 91-92, 698 A.2d 543. Hence, the declaratory judgment action is a viable method of establishing plaintiff's rights under a policy with a "no action" clause, and unless the time provided in the clause is triggered as expressly provided therein, the statute of limitations cannot be asserted as a defense. In essence, the "no action" clause may prevent or delay an action for indemnification, but it also prevents the assertion of the statute of limitations defense to a declaratory judgment action before it is triggered and for six years thereafter.
III.
Defendant cites our recent decision in Metex Corp. v. Federal Ins. Co., 290 N.J.Super. 95, 104-05, 675 A.2d 220 (App.Div.1996), for the proposition that the insured's strict liability "attaches" under the Spill Act, N.J.S.A. 58:10-23.11 to -23.11z, "once [the] insured is on notice" of a discharge.[5] It also cites Summit Assoc. Inc. v. Liberty Mutual Fire Ins. Co., 229 N.J.Super. 56, 65-66, 550 A.2d 1235 (App.Div.1988), for the proposition that "Spill Act liability triggers [a] legal obligation to pay" under a general liability policy. Defendant argues that the statute of limitations must, therefore, run from discovery of the contamination. We also recognize "that for purposes of a general liability policy, groundwater should not be considered property `owned by' the insured," and that coverage is triggered by the "damages" or expense of an ECRA investigation, monitoring and remediation as well as a third party action, including one by the State or the NJDEP, relating to the groundwater contamination. Strnad v. North River Ins. Co., 292 N.J.Super. 476, 482, 679 A.2d 166 (App.Div.1996). See also Ohaus v. Continental Casualty Ins. Co., 292 N.J.Super. 501, 509-10, 679 A.2d 179 (App.Div.1996); Adron, Inc. v. Home Ins. Co. 292 N.J.Super. 463, 474, 679 A.2d 160 (App.Div.1996); Reliance Ins. Co. v. Armstrong, 292 N.J.Super. 365, 385, 678 A.2d 1152 (App.Div.1996); Morrone v. Harleysville Mut. Ins. Co., 283 N.J.Super. 411, 419-20, 662 A.2d 562 (App.Div.1995). However, in these cases no issue regarding the impact of a "no action" clause was involved.
In Metex, the insured manufacturer sued its liability carriers for a declaratory judgment and contract damages following DEP's proposal that it and DEP enter into a memorandum of agreement regarding the insured's cleanup of the site. Metex, supra, 290 N.J.Super. at 98-99, 675 A.2d 220. Metex made no mention of a "no-action" clause in the policy, and in finding that the insured's liability did not turn on NJDEP's "knowledge or enforcement efforts," we indicated that there was nothing in the policy language which conditioned the insured's liability or *1037 the defendant's coverage on some third-party action or judgment. Writing for the court, Judge Villanueva pointed out:
the language of an insurance policy is to be given its plain meaning in order to fulfill the objectively reasonable expectations of a policy holder, Morton Int'l, Inc. v. General Accident Ins. Co. of Am., supra, 134 N.J. at 27, 629 A.2d 831; any doubts as to the existence of coverage must generally be resolved in favor of the policyholder, Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 8, 170 A.2d 800 (1961). Here, the language of Federal's primary CGL insurance policy does not require any "enforcement," "claim" or "suit" by a third party in order to entitle the plaintiff to coverage. Since there is nothing in the policy so limiting coverage, a reasonable insured would assume that it is equally as legally obligated to comply with statutory mandates as it is to comply with an administrative directive or a court decree; in other words, the source of the legal obligation is of no consequence.
[Id. at 104, 675 A.2d 220.]
The significance of Metex, therefore, includes its reference to the impact of the policy language with respect to the commencement of an action.
In Federal Ins. Co. v. Purex Indus., Inc., 972 F.Supp. 872 (D.N.J.1997), a liability carrier brought a declaratory judgment action against its insured for clarification of its responsibilities regarding the insured's environmental cleanup responsibilities under ECRA. Id. at 876. There, as here, the insured had entered into an ACO with NJDEP in order to effectuate the sale of the subject site to another party. Ibid. The insured filed a counterclaim "seek[ing] a declaration that the insurers [had] a duty to defend and indemnify [it] for all losses, liabilities and expenses arising from its clean up" obligation. The carriers asserted the New Jersey statute of limitations as a defense because more than six years passed following execution of the ACO. Id. at 879. The insured insisted, however, that because its cleanup liabilities were "not yet fully resolved" and the administrative proceeding with NJDEP had "not yet concluded," the cause of action had not "accrued." Ibid.
In rejecting the statute of limitations defense, Judge Simandle wrote:
The court finds that [the insured's] claim is not untimely under New Jersey's six year statute of limitations. The insurers' claim that the liability of [the insured] was finally determined by the signing of the ACO is unpersuasive. The ACO merely required testing of environmental conditions and remediation of contamination that might be discovered. In other words, liability was not finally determined at this point because any liability was contingent upon the discovery of contamination. Reports of contamination at the ... site were not confirmed until ... [a date within the statute of limitations].
The claims against [the insured] by the NJDEP under ECRA remain unresolved. Although [the insured] has submitted a cleanup plan and begun remediation under the plan, it insists that the NJDEP may still modify the plan or bring suit under a number of environmental statutes. Summary judgment will thus be denied on the grounds of the statute of limitations as the insurers have not proved as a matter of law that the counterclaims asserted by [the insured] were untimely.
[Id. at 880.]
Plaintiff's arguments are similar in this case. Furthermore, the Purex court went on to describe "an alternative theory not mentioned by the parties" under which the insured's claims would also have been timely "that the declaratory claim accrues when the insured's claim for coverage is denied on the merits, in alleged breach of the contract of insurance." Ibid.; see also Southland Corp. v. Ashland Oil, Inc., 696 F.Supp. 994, 1003-04 (D.N.J.1988). According to Judge Simandle:
Such a construction makes sense if the insurer is concerned about an indefinite length of future risk in a remediation process that may consume years before the full extent is known. In the present case, this construction is of no avail to the insurers, which did not deny coverage on the *1038 merits of [the insured's] claims until after this suit was filed....
[Ibid.]
The same is true here, as Judge Kole noted, and independent of the fact that the "no action" clause prevents utilization of the statute of limitations defense, in these circumstances defendant cannot contend that the cause of action accrued before it wrote its letter denying coverage.[6]
IV.
The order under review is affirmed, and the matter is remanded to the Law Division for further proceedings.
NOTES
[1] Defendant Hartford is the only surviving defendant in the action. The other carriers have settled with plaintiff.
[2] The Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 et seq., replaced ECRA in 1993.
[3] Under a general liability policy the action accrues when "liability attaches," while under an indemnity policy "the insured must have suffered an actual money loss before the insurer is liable." Bernstein v. Palmer Chevrolet & Oldsmobile, Inc., 86 N.J.Super. 117, 122, 206 A.2d 176 (App.Div.1965).
[4] Accordingly, there is a manner of establishing the insured's right to coverage, and we need not decide if a final order of the NJDEP would be the equivalent of a "final judgment after trial" for purposes of the "no action" clause. If a final NJDEP order did not trigger the "no action" clause in the absence of litigation, the insured might never obtain relief under the policy, and "[a] declaratory action may be brought, ... before a cause of action arises for breach of contract." Federal Ins. Co. v. Purex Industries, Inc., 972 F.Supp. 872, 879, n. 1 (D.N.J.1997).
[5] In Metex we wrote, "[i]t has already been determined in this State that amounts spent on environmental-response costs and remediation expenses constitute sums the insured would have to pay ` "as damages" because of property damage, within the meaning of the CGL policies at issue.' " Id., 290 N.J.Super. at 103, 675 A.2d 220 (citing Morton Int'l, Inc. v. General Accident Ins. Co. of Am., supra, 134 N.J. at 27, 629 A.2d 831). We concluded that by virtue of the strict liability imposed under the Spill Act, supra, the insured's "liability arises upon the discharge of a hazardous substance onto the property." Id. at 104, 675 A.2d 220. See also General Accident Ins. Co. of Am. v. State Dep't of Envtl. Protection, 143 N.J. 462, 469-70, 672 A.2d 1154 (1996).
[6] The parties agree there is a factual dispute on defendant's alternative defense, that plaintiff failed to honor the notice provisions of the policy and that, in any event, the trial court has not yet ruled on any issues relating to that contention. In Federal Ins. Co., supra, summary judgment was denied on a similar claim, see 972 F.Supp. at 880-82, but the insured was granted partial summary judgment as a result of NJDEP's remediation orders. Id. at 882-86.