**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3344

_____

SAMUEL SPALTER,
                              Appellant

v.

PROTECTIVE LIFE INSURANCE

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-21-cv-08843)
District Judge: Honorable Susan D. Wigenton

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 17, 2023

Before: CHAGARES, *Chief Judge*, MATEY and FUENTES, *Circuit Judges.*

(Filed: February 16, 2024)

_____

OPINION[*]

_____

MATEY, *Circuit Judge*.

_____

[*]This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

Samuel Spalter bought life insurance from Protective Life Insurance ("PLI") and fell behind on his premium payments in 2016. Despite a notice to pay up or lose his policy, he sent PLI less than what he owed. PLI cancelled the policy, and Spalter sued. But Spalter's payment was too little, his suit too late, and the District Court granted PLI summary judgment. Finding no error, we will affirm.

**I.**

In 2007, PLI issued a $3 million life insurance policy to Spalter. Like most life insurance, Spalter's Policy required regular premium payments to remain active. The Policy included a 61-day grace period maintaining coverage if Spalter failed to make a required payment. Under that provision, Spalter would remain insured, and receive a warning that, without sufficient payment by the end of the grace period, the Policy would terminate without value. Spalter's Policy also included a "Lapse Protection Endorsement," App. 3, an add-on that established a separate Lapse Protection Account ("LPA") "for the sole purpose of determining whether lapse protection applies to the Certificate." App. 52. If the LPA value "equals or exceeds" what is owed annually on the life insurance policy, the Policy will not lapse. App. 52.

Spalter failed to make his premium payments, triggering a series of 52 grace periods. The Lapse Protection began shifting between active and inactive status based on Spalter's insufficient premium payments. Beginning in 2012, and every year after that, Spalter's annual Policy report, issued by PLI, contained a notice that Lapse Protection was no longer in effect for the Policy because it was insufficiently funded. In February

2

2016, Spalter received what would be his final grace notice. The notice warned Spalter that if he failed to act by March 12, 2016, to fund his Policy, "all coverage" would end. App. 3. The notice did not state how much Spalter had to pay; instead, he was given a customer service number to call. And the notice reminded Spalter that, should his Policy lapse, he could still apply to reinstate his Policy within five years of the end of the grace period.

Spalter called PLI customer service, and a representative advised him that $16,034.14 was due by March 12, 2016. On March 10, 2016, PLI received a payment of only $15,425.00 from Spalter. On March 21, 2016, PLI notified Spalter the Policy lapsed for insufficient funds. Spalter did not apply for reinstatement within the specified five-year window. Instead, Spalter sued PLI in New Jersey state court, alleging PLI unlawfully terminated his Policy and seeking a declaratory judgment that his "Policy is in full force and effect." App. 4, 18–21. PLI removed to federal court and, following discovery, the parties cross-moved for summary judgment. The District Court granted PLI's motion and denied Spalter's.[1]

---

[1] We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review of the decisions of the District Court under Federal Rule of Civil Procedure 56(a). *See Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 229 (3d Cir. 2021). We "may affirm on any ground supported by the record." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023).

**II.**

Spalter first argues that PLI failed to perform its obligations under the Policy because its notices were deficient as a matter of law.[2] PLI was required, according to Spalter, to "request the correct amount" from Spalter in the notices he received. Opening Br. 8. Since the ones Spalter received never specified an amount due, Spalter says the notices were invalid. We agree with the District Court's contrary conclusion. An insurance policy is interpreted according to the "plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992).[3] The Policy states that during a grace period, "[PLI] will notify you in writing that a premium grace period has

---

[2] Spalter argues that he is not alleging breach of contract, as he only seeks a declaratory judgment that the Policy is still in effect. Not so. His suit is based on the terms and alleged breach of the Policy as a contract. *See, e.g.*, App. 20–21 (asserting in the Complaint that PLI "did not comply with" various provisions of the Policy, that Spalter fulfilled his duties and obligations, and that PLI's actions violated the Policy).

[3] A federal court sitting in diversity jurisdiction looks at the forum state's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Spalter filed his suit in New Jersey state court. Under New Jersey law, where parties lack a contractual choice-of-law clause, as here, we first "determine whether an actual conflict exists" by assessing the "substance of the potentially applicable laws." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). Life insurance contracts are governed "by the local law of the state where the insured was domiciled at the time the policy was applied for." Restatement (Second) of Conflict of Laws § 192 (Am. L. Inst. 1971); *see also id.* cmt. b ("[T]he insured will be held to be domiciled in the state of which he describes himself as a resident in his application to the insurance company.") Here, Florida. Comparing Florida and New Jersey law, we see no conflict. *Compare Voorhees*, 607 A.2d at 1260 ("[A]n insurance policy should be interpreted according to its plain and ordinary meaning."), *with Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003) ("[I]nsurance contracts must be construed in accordance with the plain language of the policy."). So "the forum state applies its own law to resolve the disputed issue." *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007).

begun. If we do not receive sufficient premium to keep the Certificate in force before the end of the premium grace period, the Certificate will terminate without value as of that date." App. 48. A contractual obligation that PLI satisfied in its notice dated February 8, 2016. PLI had no obligation, contractually or otherwise,[4] to state in each notice how much Spalter owed. Because PLI did all it had to do, Spalter's argument about the notices' content fails.

Next, Spalter argues that PLI's quoted premium payment of $16,034.14 was too high and the $15,425.00 he paid PLI was the true amount he owed. A curious claim since he never disputed the amount due upon receiving previous grace notices, or challenged the quote when it was provided (or any time thereafter). But it is barred by the New Jersey six-year statute of limitations beginning "after the cause of any such action shall have accrued." N.J.S.A. § 2A:14-1(a); *see also Crest-Foam Corp. v. Aetna Ins. Co.*, 727 A.2d 1030, 1034 (N.J. App. Div. 1999). New Jersey starts the limitations clock when "the injured party knows, or, with the exercise of reasonable diligence, could have discovered the injury." *Sodora v. Sodora*, 768 A.2d 840, 842 (N.J. Super. Ct. Ch. Div. 2000). Spalter learned of the alleged miscalculations in 2009, the first time he received a grace notice. And in each of the 50 grace notices after that. All warned that his Lapse Protection Account was underfunded, and the early notice places his claim well beyond the six-year statute of limitations.

---

[4] There is no New Jersey law governing lapse notices, which Spalter admits.

\* \* \* \*

The District Court did not err in granting PLI's motion for summary judgment, and we will affirm.