65 N.J. Super. 328 (1961)
167 A.2d 821
HARTFORD ACCIDENT AND INDEMNITY COMPANY, A CORPORATION OF THE STATE OF CONNECTICUT, PLAINTIFF-RESPONDENT,
v.
SELECTED RISKS INDEMNITY COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1961.
Decided February 7, 1961.
*329 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Sidney P. McCord, Jr. argued the cause for plaintiff-respondent (Messrs. Starr, Summerill & Davis, attorneys; Mr. Edgar E. Moss, II, of counsel).
*330 Mr. Philip C. Daniels, Jr. argued the cause for defendant-appellant (Messrs. Keown & Daniels, attorneys; Mr. Daniels, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
The issue presented for our determination is whether two concededly "excess" automobile liability carriers, called upon to contribute to a settlement or judgment, should share equally rather than in proportion to their respective applicable policy limits.
Plaintiff instituted a declaratory judgment action seeking resolution of this question in its favor. Its demand for relief was granted, by way of a determination that "inter se coverage afforded by the plaintiff and the defendant are concurrent, and that, in any settlement or judgment, the plaintiff and defendant will share equally up to their respective limits of liability, irrespective of what those limits might be." Defendant appeals from that substantive conclusion, in addition to alleging that the question is not ripe for adjudication.
The facts are not in dispute. The Community Service Station, while repairing the vehicle of one William B. Knight, Jr., had supplied him with an automobile as a temporary substitute. The liability policy on this car was carried by Employers Liability Assurance Corp., Ltd. ("Employers"). On December 28, 1957, while the vehicle was being operated by James Knight, Jr., with the permission of his uncle, William B. Knight, Jr., riding as a passenger, it was involved in a collision with another automobile driven by Mary M. Herbert. Her father, Charles H. Herbert, the owner of the car, was a passenger, along with her sister, Carol G. Herbert. As a result of the accident, both William B. Knight, Jr. and Charles Herbert died, and the Herbert girls sustained severe personal injuries. Shortly after the filing of the pleadings in the instant matter, suit was instituted on behalf of Mr. Herbert's estate and the Herbert sisters against James Knight, Jr., Community Service *331 Station, and the executrix of the estate of William B. Knight, Jr.
The involvement of plaintiff ("Hartford") and defendant ("Selected") arises out of policies issued by them to James Knight, Jr. and William B. Knight, Jr., respectively, covering automobiles owned by the two men. The Hartford policy protects relatives of the named assured with respect to a "non-owned" automobile; the Selected policy covers, by its terms, named and additional assureds while operating a "temporary substitute" automobile. It is conceded by each company that its policy covers this accident.
Employers has accepted its responsibility as primary carrier, providing coverage to the limits of its policy for all three defendants in the Herbert-Knight action. Hartford and Selected, having stipulated that they are "excess" carriers under the terms of their policies, focus their respective legal contentions on the following clause, contained in identical form in each of their instruments:
"Other Insurance: If the insured has other insurance against a loss covered by Section I of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
Defendant urges that the quoted provision evidences an intention that where a non-owned or temporary substitute automobile is involved, the contribution of the carriers should be pro-rated on the basis of the liability limits in their respective policies. Plaintiff counters this contention by submitting that the issue has been foreclosed by the Supreme Court's holding for equal sharing of the loss in Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554 (1959).
We consider, preliminarily, the contention that this action was brought prematurely. The Declaratory Judgment *332 Act, N.J.S. 2A:16-50 et seq., is a remedial device designed to expedite the definitive establishment of private rights and duties and thereby forestall the emergence of costly and cumbersome trial proceedings. See National-Ben Franklin Fire Ins. Co. v. Camden Trust Co., 21 N.J. 16 (1956). The worthy purposes of the act amply justify the liberal construction accorded it since the establishment of our new court system by the 1947 Constitution. Ibid., 21 N.J., at p. 22; Utility Blade & Razor Co. v. Donovan, 33 N.J. Super. 566 (App. Div. 1955); also see R.R. 4:92A; Borchard, Declaratory Judgments (2d ed. 1941), pp. 316, 326.
As this court has previously remarked, "no more fertile ground exists for the use of the declaratory judgment procedure than in the field of insurance * * *." Condenser Service & Engineering Co., Inc. v. American Mutual Liability Insurance Co., 45 N.J. Super. 31, 38 (App. Div. 1957); see Annotation, 142 A.L.R. 8-76 (1943). This is an area in which the construction of contractual language  a function for which the declaratory judgment machinery is tailor-made  is a constantly recurring event. To avoid overburdening the judiciary with purely hypothetical questions, however, the parties to the action must demonstrate possession of truly adverse legal interests of sufficient immediacy and reality. See Condenser Service & Engineering Co., Inc. v. American Mutual Liability Insurance Co., supra; and cases cited therein at p. 39 of 45 N.J. Super.
The complaint asked relief in the form of: (1) a declaration that both plaintiff and defendant are carriers for any liability in excess of the coverage offered by Employers, and (2) a determination of the basis upon which the two carriers would contribute to any settlement or judgment in excess of the liability limits of the primary carrier. Defendant, by way of its answer, denied that plaintiff was entitled to the relief sought, contesting Hartford's right to an equal division of any payments made by virtue of the *333 "other insurance" clause. At the hearing on plaintiff's motion for summary judgment, the parties stipulated that any judgment or settlement in the Herbert-Knight action would exceed the liability limits of the primary carrier, Employers.
It would thus appear that the questions raised by the parties herein are both real and immediate. The existence of the Herbert suit, in which settlement negotiations, not to mention trial, are or undoubtedly soon will be undertaken, the assertion of a substantial legal right  premised on a specific contractual clause  by plaintiff and the express denial thereof by defendant, the stipulation amounting to an admission that the interests of these parties will be vitally affected by the outcome of the Herbert litigation  all combine to demonstrate the existence of a concrete, contested issue. Defendant's assertion that a determination on the merits of its status vis-a-vis plaintiff will hinder its settlement negotiations with the Herberts would seem to be self-answering. The desire to bargain with a fist-full of undetermined rights may be appropriate at the poker table, but not in our law courts under modern concepts of open litigation. We conclude that a justiciable controversy has been presented.
The parties' substantive assertions are focused primarily on the effect of the holding in Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., supra. In Cosmopolitan, the Essex County News Company had rented a truck from the U-Drive-It Company and, while being driven by one of the former's employees, the truck collided with another vehicle. Cosmopolitan was the News Company's insurer and its policy extended coverage to any non-owned or hired vehicles used in Essex's business, with the proviso that the extended coverage "shall be excess insurance over any other valid and collectible insurance." The U-Drive-It Company was insured by Continental, whose policy  under an omnibus clause  covered any lessee and his driver; the instrument, however, likewise labelled its *334 coverage as "excess" over "any other valid and collectible insurance available to the insured * * *."
Suit for reimbursement was instituted by Cosmopolitan, which had settled the claim of the party involved in the collision with the truck. The Supreme Court, having certified to the trial court, was faced with the question of which carrier was primarily liable. The court reviewed the exhaustive litigation in this area, see Annotation, 69 A.L.R.2d 1122 (1960); 2 Richards, Insurance, (5th ed., Freedman, 1952), § 182, pp. 651-52; 29A Am. Jur., Insurance, §§ 1715, 1716, pp. 794-95, and concluded that although both policies provided they would be "excess" insurance, there could be no "excess" coverage in the absence of a "primary" carrier. It was therefore held that the excess insurance provisions, being mutually repugnant, were inoperative and that the general coverage provisions of each policy applied.
Having determined that both insurers should share the burden of liability, the court proceeded to consider the formula by which the apportionment would be made. Its conclusion that the parties should contribute in equal proportions  rather than in relation to their liability limits or premiums received  is in our opinion dispositive of the conflicting contentions herein by Hartford and Selected. Of controlling significance is the court's construction of Condition No. 14 of the Cosmopolitan policy, almost identical to the provisions in the Hartford and Selected instruments, and reading as follows (28 N.J., supra, at pp. 556-557):
"If the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."
*335 The court rejected Continental's plea for proration, stating that "neither policy expressly provides for * * * prorating where a hired or non-owned vehicle is involved," and characterizing the above-quoted policy clause as "* * * provid[ing] for prorating in other [than where a non-owned or hired vehicle is involved] circumstances." (28 N.J., supra, at p. 564.)
The Supreme Court's interpretation is, of course, conclusive of the meaning to be placed upon the Hartford and Selected provisos. Moreover, it recommends itself to us as a logical reflection of the insurers' intentions in inserting this clause into their policies. A limitation was sought in instances of primary liability by means of the prorating feature. Once the conditions of an accident  i.e., the fact that the assured was operating a "non-owned" or "temporary substitute" vehicle  result in activation, as here, of the excess coverage proviso, the connection between the policy liability limits and the proportion of responsibility to be borne by each carrier becomes too remote to warrant proration on that basis. It was therefore contemplated, in our opinion, that the prorating feature would drop out at this stage. In the absence of such a provision, the liability of Hartford and Selected is joint and several. 2 Richards, Insurance, supra, § 175, p. 637.
Defendant urges that the absence of a primary carrier in Cosmopolitan, with the result that both of the "excess" insurers were in effect elevated to that position, distinguishes the present case, where the existence and liability of a primary carrier are conceded. We perceive no distinction in principle. In both cases, the competing insurers occupy co-ordinate status. In Cosmopolitan, as adjudged; here, as conceded by the parties. The crucial factor, in our view, is that both Hartford and Selected are on the same level of liability. Their respective duties to contribute are to be invoked at the same point  when the coverage of the primary carrier is exhausted.
The judgment of the trial court is affirmed.