### CALDWELL TRUCKING PRP GROUP, Plaintiff,

v.

SPAULDING COMPOSITES CO., INC., individually and as successor to Mycalex Corporation, Aetna Casualty & Surety Co., Allstate Insurance Co., as successor to Northbrook Insurance Co., American Centennial Insurance Co., American Home Insurance Co., Employers Insurance of Wausau, Greenwich Insurance Co., as successor to Harbor Insurance Company, Industrial Underwriters Insurance Co., Liberty Mutual Insurance Co., Lexington Insurance Co., Certain Underwriters at Lloyds of London, Certain London Market Defendants, Mutual Fire, Marine and Inland Insurance Co., National Union Fire Insurance Co., New England Reinsurance Corp., New Jersey Property–Liability Insurance Guarantee Association, John Doe 1–50, Defendants.

### SPAULDING COMPOSITES CO., INC., Cross–Claim Plaintiff,

v.

AETNA CASUALTY & SURETY CO., Allstate Insurance Co., as successor to Northbrook Insurance Co., American Centennial Insurance Co., American Home Insurance Co., Employers Insurance of Wausau, Greenwich Insurance Co., as successor to Harbor Insurance Company, Industrial Underwriters Insurance Co., Liberty Mutual Insurance Co., Lexington Insurance Co., Inc., Certain Underwriters at Lloyds of London, Certain London Market Defendants,

Mutual Fire, Marine and Inland Insurance Co., National Union Fire Insurance Co., New England Reinsurance Corp., New Jersey Property–Liability Insurance Guarantee Association, John Doe 1–50, Cross–Claim Defendants.

### NEW ENGLAND INSURANCE CO., Counterclaim and Cross–Claim Plaintiff,

v.

SPAULDING COMPOSITES CO., INC., Aetna Casualty & Surety Co., Allstate Insurance Co., as successor to Northbrook Insurance Co., American Centennial Insurance Co., American Home Insurance Co., Employers Insurance of Wausau, Greenwich Insurance Co., as successor to Harbor Insurance Company, Industrial Underwriters Insurance Co., Liberty Mutual Insurance Co., Lexington Insurance Co., Inc., Certain Underwriters at Lloyds of London, Certain London Market Defendants, Mutual Fire, Marine and Inland Insurance Co., National Union Fire Insurance Co., New Jersey Property–Liability Insurance Guarantee Association, John Doe 1–50, Counterclaim and Cross–Claim Defendants.

Civ. No. 94–3531 (WGB).

United States District Court, D. New Jersey.

July 13, 1995.

Camden, NJ, for defendant Spaulding Composites Co., Inc.

Manta and Welge by John C. Sullivan, Stephen F. Brock, Michael Dolich, Princeton, NJ, and Wilson, Elser, Moskowitz, Edelman & Dicker by James C. Orr, Newark, NJ, for defendant Liberty Mut. Ins. Co.

Feinberg and Tritsch by Bruce A. Tritsch, Livingston, NJ, and Wright, Robinson, McCammon, Ostheimer & Tatum by Thomas S. Schaufelberger, Paul A. Fitzsimmons, Michael N. Clark, Washington, DC, for defendant Employers Ins. of Wausau.

Garrity, Graham & Favetta by Antonio D. Favetta, Montclair, NJ, for defendant American Centennial Ins. Co.

Harwood Lloyd by John D. Aleen, III, Kim E. Sparano, Hackensack, NJ, for defendant Aetna Cas. & Sur. Co.

Siff Rosen P.C. by Lisa S. Rabinowitz, New York City, for defendant New England Ins. Co.

Ronca, McDonald & Hanley by William J. Hanley, Livingston, NJ, and Jackson & Campbell, P.C. by James P. Schaller, Richard W. Bryan, Margery J. Lexa, Washington, DC, for defendant American Home Assur. Co., Lexington Ins. Co., and National Union Fire Ins. Co. of Pittsburgh, Pa.

Robinson, St. John & Wayne by Karol Corbin Walker, Steve Manley, Newark, NJ, for defendant Industrial Underwriters Ins. Co.

Mendes & Mount by Claire T. Barile, Newark, NJ, for defendants Certain Underwriters at Lloyds of London and Certain London Market defendants.

Francis & Berry, by John O'Farrell, Beth A. Hardy, Morristown, NJ, for defendant New Jersey Property–Liab. Ins. Guar. Ass'n.

Pitney, Hardin, Kipp, & Szuch by Peter J. Herzberg, Kathy Dutton Helmer, Morristown, NJ for plaintiff Caldwell Trucking PRP Group.

Lowenstein, Sandler, Kohl, Fisher & Boylan by Robert D. Chesler, Roseland, NJ, and Timby, Brown & Timby by: John J. Dugan,

## OPINION

BASSLER, District Judge:

Plaintiff, Caldwell Trucking PRP Group ("PRP Group"), is an unincorporated association of the parties attempting to remediate hazardous substance contamination at the Caldwell Trucking site pursuant to a consent decree entered by this Court in *State of New*

*Jersey and United States of America v. the Carborundum Company et al.*, consolidated Civil Action no. 94–1437. Compl. ¶¶ 9, 16. Spaulding was not a party to this consent decree even though the United States Environmental Protection Agency ("EPA") had identified Spaulding, along with the members of the PRP Group, as a potentially responsible party for contamination at the site pursuant to 42 U.S.C. § 9607. Compl. ¶ 16.

The PRP Group seeks contribution from Spaulding to cover past and future costs of cleaning up the Caldwell Trucking site. In addition, the PRP Group brings a direct action for damages and a declaration of coverage against Spaulding's insurers. Spaulding has cross-claimed for damages and a declaration of coverage against the same insurers. Numerous motions are before the Court for resolution.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants, Liberty Mutual Insurance Company ("Liberty"), Employers Insurance of Wausau ("Wausau"), American Centennial Insurance Company ("American Centennial"), American Home Assurance Company ("American Home"), Lexington Insurance Company ("Lexington"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), New England Insurance Company ("New England"), Industrial Underwriters Insurance Company ("Industrial Underwriters"), Certain Underwriters at Lloyd's, London ("Lloyd's"), Certain London Market Insurance Companies ("London Market"), Allstate Insurance Company ("Allstate"), and Aetna Casualty & Surety Company ("Aetna")[1] move to dismiss counts five and six of Plaintiff, the Caldwell Trucking PRP Group's Complaint for failure to state a claim upon which relief can be granted.

Several of these Defendants have also moved to dismiss the Complaint under the doctrine of forum non conveniens or alternatively, to transfer this action to the United States District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a).

In addition, Defendants Wausau, Liberty, New England, American Home, Industrial Underwriters, American Centennial, Lloyd's, London Market, Aetna and Allstate move to dismiss the Cross–Claim asserted by Spaulding Composites, Co. Inc. ("Spaulding"), for failure to state a claim upon which relief can be granted. Additionally, several Defendants move to dismiss those claims asserted by Spaulding related to contamination at a site in Tonawanda, New York, for improper joinder under Federal Rule of Civil Procedure 13(g). These Defendants also reiterate their request to transfer this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a).

This Court possesses jurisdiction over this action to recover cleanup and response costs incurred to remediate hazardous substance contamination at the Caldwell Trucking site pursuant to 42 U.S.C. §§ 9607, 9613 and 28 U.S.C. § 1331. The Court possesses supplemental jurisdiction over Plaintiff's claims based upon New Jersey law under 28 U.S.C. § 1367.

For the reasons set forth in the Opinion below, Defendants' motions to dismiss counts five and six of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) are **granted.** Defendants' motions to dismiss for forum non conveniens are **denied.** Defendants' motions for transfer to the Western District of New York are also **denied.**

Defendants Wausau, Liberty, New England, American Home, Industrial Underwriters, American Centennial, Lloyd's, London Market and Allstate's motions to dismiss Spaulding's Cross–Complaint are **granted.** The motions to transfer the Cross–Complaint to the Western District of New York filed by these Defendants are **denied.** These same Defendants' motions to dismiss those claims asserted by Spaulding related to contamination at a site in Tonawanda, New York, for improper joinder under Federal Rule of Civil Procedure 13(g) are **denied.**

---

**1.** On March 17, 1995, this Court granted Aetna's unopposed motion for summary judgment. The Court dismissed all claims and cross-claims against Aetna based upon the evidence submitted to show that Aetna did not issue policies 783162 and UL 941561. Consequently, the pending motions are moot with respect to Aetna.

## I. BACKGROUND

On this motion to dismiss, the Court must accept all of Plaintiff's factual allegations as true. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Between approximately 1958 and 1973, Caldwell Trucking Company transported lead-containing wastes allegedly generated by Spaulding and its predecessor in interest, Mycalex Corporation, and deposited them at the site. Compl. ¶¶ 10, 20.

Since February, 1993, Spaulding has been involved in a bankruptcy proceeding in the United States Bankruptcy Court, Central District of California, case no. 93–16711–CA. Compl. ¶ 52. In September, 1993, the PRP Group filed a proof of claim form for damages already incurred and those anticipated in connection with cleaning up the Caldwell Trucking site. Compl. ¶ 53.

On May 17, 1994, Defendant, Liberty, filed a complaint in the United States District Court for the Western District of New York against Nortek, Inc. ("Nortek") and Monogram Industries, Inc. ("Monogram"), Spaulding's former corporate parents, that were named, with Spaulding, as coinsureds under policies issued by some of the Defendant insurers. In the Western District of New York action, Liberty sought a declaratory judgment that its policies issued to Nortek, Monogram, and Spaulding, did not provide coverage for environmental contamination at either the Caldwell Trucking or Tonawanda site. Before filing the New York action, Liberty did not obtain relief from the automatic stay triggered by Spaulding's bankruptcy petition.

In an Amended Stipulation, filed on July 11, 1994, the Bankruptcy Court modified the automatic stay to permit the PRP Group and the EPA to maintain actions in the United States District Court for the District of New Jersey or other appropriate forum for "declaratory relief against the Insurers to recover insurance proceeds from the applicable policies . . ." Compl.Exh. 1 ¶ 1. In addition, Spaulding purportedly assigned "any and all choses in action and causes of action arising out of or relating to the Caldwell Trucking site" to the PRP Group. Compl. ¶ 55B, Exh. 1 ¶ 2.

Furthermore, under the terms of the Amended Stipulation, up to $75,000 of any recovery by the PRP Group against Spaulding's insurers was designated for payment of Plaintiff's attorneys' fees incurred in this action as well as the Bankruptcy case. Thereafter, Spaulding possessed a financial interest in any net recovery by the PRP Group that exceeded $1 million. Compl.Exh. 1 ¶ 12. Spaulding would receive 5% of any net recovery by the PRP Group between $1 million and $3.5 million, or 10% of any net recovery above $3.5 million. Compl.Exh. 1 ¶ 12b.

Pursuant to the Amended Stipulation, on July 25, 1994, the PRP Group filed this action, naming the insurers of Spaulding and its predecessor, Mycalex, directly as defendants.[2] Plaintiff contends that this direct action against the Defendant insurance companies is authorized by the valid assignment of the insurance policies through the Amended Stipulation entered by the Bankruptcy Court. Compl. ¶ 63 (Count V). Additionally, Plaintiff asserts that this direct action against Spaulding's insurance carriers is authorized by the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10–23.11s Compl. ¶ 66 (Count VI).

In response, Spaulding cross-claimed against the remaining Defendants, Spaulding's insurers, for declaratory judgment. Spaulding seeks a declaration that the Defendant insurers are obligated under the insurance policies to indemnify Spaulding for any liability arising from environmental contamination at the Caldwell Trucking site in New Jersey, and another site, located in Tonawanda, New York. Moreover, Spaulding seeks a declaration that under the policies, the De-

---

**2.** For convenience, the Court will refer to the other Defendants as Spaulding's insurers, even though Spaulding was not a named insured on all of the policies. Some of the policies were issued to Spaulding's corporate relatives or predecessors. In addition, some of the Defendants did not insure Spaulding directly, but acted as reinsurers of Spaulding's insurers. Both the insurers and reinsurers are entitled to avail themselves of any defenses against this action created by the language of the policies. Therefore, the distinction between the insurers and reinsurers is not material to the disposition of this motion.

**1252**

fendant insurers are obligated to defend Spaulding against the PRP Group's claims.

Subsequently, on August 1, 1994, the Bankruptcy Court issued a preliminary injunction, enjoining Liberty from prosecuting the New York action and denying Liberty's request for relief from the automatic stay. On September 14, 1994, the Bankruptcy Court declared the action commenced by Liberty in the Western District of New York void. Liberty has appealed this decision. In spite of the Bankruptcy Court's ruling, several Defendants request this Court to transfer this action to the Western District of New York, to be consolidated with Liberty's action against Nortek and Monogram, an action which has been declared void.

## II. DISCUSSION

### A. Standards Governing Motion to Dismiss

■ Federal Rule of Civil Procedure 12(b)(6) allows a party to move for a dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." Since the long-established federal policy of civil litigation is to decide cases on the proofs, district courts generally disfavor Rule 12(b)(6) motions. *Melo–Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir.1965); *Panek v. Bogucz*, 718 F.Supp. 1228, 1229 (D.N.J.1989).

In deciding a motion to dismiss for failure to state a claim, all allegations in the pleadings must be accepted as true and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations. *See Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 n. 1 (3d Cir.1987); *Markowitz v. Northeast Land Company*, 906 F.2d 100, 103 (3d Cir.1990). "All the rules require is a short and plain statement of the claim that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103.

Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct.

1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Accepting the facts in the pleadings as true and giving them all reasonable inferences, a court must dismiss under Rule 12(b)(6) "[i]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Neitzke*, 490 U.S. at 326–27, 109 S.Ct. at 1832.

■ Ordinarily, when a court relies upon matters outside of the pleadings in deciding a motion to dismiss, it must convert the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(c). An exception to this rule, however, permits a Court to consider documents, such as contracts, that are referred to in the complaint, as well as public records, to which the public has "unqualified access." *E.g., Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196–97 (3d Cir.1993). In reliance upon these exceptions, the Court has considered insurance policies, referred to in the complaint, as well as copies of pleadings and other materials filed in other courts. Although the parties submitted additional materials and certifications, the Court has not relied upon them.

### B. Defendants' Motions to Dismiss

In the Complaint and opposition papers, Plaintiff asserts two grounds for this direct action against the Defendant insurers: (1) the New Jersey Spill Act, N.J.S.A. § 58:10–23.11s; and (2) the allegedly valid assignment of the policies by Spaulding in the Amended Stipulation entered in Bankruptcy Court.

According to the Defendant insurers, both of the alleged bases of the PRP Group's Complaint are invalid. First, the Defendants argue, the New Jersey Spill Act does not authorize a direct action against them because they are not insurers of a "major facility" that have provided "evidence of financial

responsibility" within the meaning of N.J.S.A. § 58:10–23.11d5. Second, the Defendants contend that Spaulding's alleged assignment of its rights under the insurance policies to the PRP Group, embodied in the Amended Stipulation entered by the Bankruptcy Court, is invalid.

With respect to the motions to dismiss Spaulding's Cross–Complaint, Defendants rely upon two arguments. First, Defendants contend that the "action against company" provisions of the policies prevent both Spaulding and the PRP Group, as Spaulding's assignee, from pursuing claims against the insurers in this action. Alternatively, Defendants reiterate their arguments that the assignment is invalid. The Defendant insurers argue that they cannot be expected to defend Spaulding against the PRP Group's claims, when under the terms of the Amended Stipulation, Spaulding has a right to a percentage of the recovery ultimately obtained from the insurers by the PRP Group. Spaulding maintains that its assignment to the PRP Group of any right to recovery under the policies does not relieve the Defendant insurers of their policy obligation to provide a defense.

Since the Defendant insurers' motions to dismiss the PRP Group's Complaint and Spaulding's Cross–Complaint both turn upon this Court's interpretation of the "action against company" provisions of the policies, the Court will first address count VI of the PRP Group's Complaint, which asserts claims under the New Jersey Spill Act. N.J.S.A. §§ 58:10–23.11–58:10–23.11f7 (1992 and Supp.1995).

### 1. The New Jersey Spill Act Does Not Authorize A Direct Action By the PRP Group Against Spaulding's Insurers.

■ As a general rule, the common law prohibits actions by a third party against an insurer absent some statutory or contractual provision permitting direct action. *Manukas v. The American Ins. Co.*, 98 N.J.Super. 522, 524, 237 A.2d 898 (App.Div.1968). For example, N.J.S.A. § 17:28–2 prohibits an injured third party from maintaining a direct action against an insurer unless the injured party first obtains a judgment and execution

against the insured is returned unsatisfied because of either bankruptcy or insolvency. N.J.S.A. § 17:28–2 (1994); *accord Dransfield v. Citizens Casualty Co.*, 5 N.J. 190, 74 A.2d 304 (1950). If the PRP Group obtained a judgment against Spaulding that could not be executed because of Spaulding's bankruptcy, section 17:28–2 could authorize a direct action by the PRP Group against the Defendant insurers.

■ In order to avoid the delay of obtaining a judgment against Spaulding and waiting for the judgment to be returned unsatisfied because of Spaulding's bankruptcy, the PRP Group relies upon another statutory exception to the common law rule prohibiting direct action against insurers, the New Jersey Spill Act ("Spill Act"). N.J.S.A. § 58:10–23.11s (1992). The Spill Act, in relevant part, provides as follows:

> Any claims for costs of cleanup, civil penalties or damages by the State, and any claim for damages by any injured person, may be brought directly against the bond, the insurer, or any other person providing evidence of financial responsibility.

N.J.S.A. § 58:10–23.11s (1992). Without question, the Spill Act abrogates the common law prohibition of direct actions against an insurer. This Court must now determine the scope of this exception to the common law rule and decide whether it permits an injured party to pursue a direct action against an insurer that issued a general comprehensive liability policy to an alleged polluter.

Although Plaintiff argues that the statute is plain on its face, conflicting interpretations by the New Jersey Superior Court, Law Division show that the statute is in fact ambiguous. *Compare e.g., Bergknoff et al. v. A. Bessenyei and Son, Inc.*, No. L–10144–94 (Law Div, April 3, 1995), *with e.g., Bresnick v. AT & T Bell Laboratories*, No. L–4113–93 (Law Div., Feb. 4, 1994).

The Spill Act authorizes an action by "any injured person .. directly against the bond, the insurer, or any other person providing evidence of financial responsibility." N.J.S.A. § 58:10–23.11s. This provision is ambiguous because it is not clear whether the phrase "evidence of financial responsibili-

ty" includes "bond" and "insurer," or creates a third, wholly independent category of persons subject to suit under the Spill Act. If the latter interpretation, promoted by the Plaintiff, is correct, then any "insurer" of a person or entity responsible for an illegal discharge of hazardous substances could be subject to a direct suit for damages. *See* N.J.S.A. § 58:10–23.11g(c) (Supp.1995).

Contrary to Plaintiff's interpretation, the statutory language suggests that "evidence of financial responsibility" does not apply to any person or insurer but rather, is a term of art. The legislature's use of the definite article "the" in connection with "bond" and "insurer," as opposed to the indefinite article "a" or "an," suggests that these terms can only be properly understood by reference to other sections of the Act.

Along these lines, Defendants argue that § 58:10–23.11s should be read in para materia with N.J.S.A. § 58:10–23.11d5 (1992), the only other section of the Spill Act that refers to "financial responsibility." Section 23.11d5 requires owners and operators of "major facilities" to provide the NJDEP with evidence of financial responsibility for cleaning up discharges of hazardous substances.

If the direct action provision, section 23.11s, is interpreted in conjunction with section 23.11d5, the Spill Act authorizes direct actions only against insurers of major facilities that are required to provide "evidence of financial responsibility." *See* N.J.S.A. §§ 58:10–23.11d5, 58:10–23.11s. Since the parties concede that Spaulding is not a "major facility" as defined under the Spill Act, and its insurers have not provided "evidence of financial responsibility," Defendants' interpretation would preclude the PRP Group from maintaining this direct action. *See* N.J.S.A. § 58:10–23.11b(1).

To date, the New Jersey courts have not issued any published opinions interpreting N.J.S.A. § 58:10–23.11s. *See Kessler v. Tarrats*, 191 N.J.Super. 273, 311, 466 A.2d 581 (Ch.Div.1983), *aff'd*, 194 N.J.Super. 136, 476 A.2d 326 (App.Div.1984) (mentioning N.J.S.A. § 58:10.23–11s in passing). The parties have identified eleven unpublished decisions of the New Jersey Superior Court, Law Division. The parties concede that New Jersey Court

Rule 1:36–3 provides that "[n]o unpublished opinion shall constitute precedent or be binding upon any court."

The Court has reviewed the unpublished decisions and notes that eight of those cases have found that N.J.S.A. § 58:10–23.11s does not confer a direct right of action against insurers, like the Defendants, that have not provided evidence of financial responsibility. *See Bergknoff*, No. L–10144–94 (Law Div., April 3, 1995); *James Stanko et al. v. John Osmun et al.*, No. L–00425–94 (Law Div., Oct. 4, 1994); *Connells Fuel Oil Co. v. Pennsylvania National Mutual Casualty Ins. Group*, No. L–003803–93 (Law Div., July 15, 1994); *GEI Int'l Corp. v. St. Paul Fire and Marine Ins. Co.*, No. 1–221–92 (Law Div., March 18, 1994); *Creighton v. Robinson*, No. 1–001687–93 (Law Div., Dec. 17, 1993); *Silverton Investors v. Sea Coast Oil*, No. L–2867–92 (Law Div., Nov. 19, 1993); *Keating v. ABC Detachable Container*, No. L–12152–90 (Law Div., Dec. 1, 1992); *Selecto–Flash Inc. v. Murray Biddleman*, No. L–1289–90 (Law Div., July 18, 1990).

Three of these unpublished cases, however, have permitted a direct action against an insurer. *Bresnick*, No. L–4113–93 (Law Div., Feb. 4, 1994); *Rechler Partnership v. Aircomo*, No. W–054839–88 (Law Div., March 9, 1992); *Kwiatowski v. Texaco*, No. C–6322–86 (Ch.Div., July 5, 1989).

Rather than discuss those unpublished decisions at length and effectively treat them as precedent in violation of New Jersey Rule 1:36–3, the Court conducts its own independent analysis.

■ As a general rule, changes in the common law must be evidenced by a clear expression of legislative intent and must be narrowly construed. *See Carlo v. Okonite–Callender Cable Co.*, 3 N.J. 253, 265, 69 A.2d 734 (1949). Since the direct action provision, § 58:10–23.11s, is ambiguous, it does not clearly evidence a legislative intent to change the common law prohibition of third party actions against insurers. *See e.g., Manukas*, 98 N.J.Super. at 524, 237 A.2d 898.

In order to avoid dismissal, Plaintiff argues that the New Jersey Department of

Environmental Protection ("NJDEP")[3] has interpreted section 58:10–23.11s of the Spill Act to authorize a direct action against any insurer where a spill has occurred. As evidence of the NJDEP's position, Plaintiff has submitted a copy of an affidavit by Dennis Hart, dated July 3, 1991, and apparently submitted in *Keating v. ABC Detachable Container*, No. L–12152–90 (Law Div.).

In the affidavit, Mr. Hart, then Acting Assistant Director of the Responsible Party Cleanup Element, Division of Hazardous Waste Management, Department of Environmental Protection, stated that New Jersey "routinely issues notices to Insurers in complex multiparty cases regardless of whether the insured party is a major facility" required to provide evidence of financial responsibility under N.J.S.A. § 58:10–23.11d5. *See* Pl.Br.Exh. S ¶¶ 1–2. Plaintiff argues that the NJDEP's interpretation of the direct action provision "is entitled to prevail, so long as it is not plainly unreasonable". *See Metromedia, Inc. v. Director, Div. of Taxation*, 97 N.J. 313, 327, 478 A.2d 742 (1984).

■ For several reasons, the Court is reluctant to defer to the NJDEP's interpretation of the direct action provision as set forth in the Hart affidavit. As a threshold matter, the affidavit is not an original and has not been authenticated as a copy of an official public record. Therefore, it is not properly before the Court. Even if the Hart affidavit were admissible, the affidavit is not current but reflects NJDEP policy in effect four years ago, as of July, 1991. Furthermore, the Court is particularly reluctant to treat the Hart affidavit as an accurate representation of the NJDEP's current interpretation of the Spill Act because the affidavit predates the New Jersey legislature's 1990 amendments, which added section 58:10–23.11d5. N.J.Laws c. 78, § 5.

The parties contest the significance of the 1990 amendments to the Spill Act. In 1990, the legislature did nothing to amend the direct action provision, § 58:10–23.11s. Plaintiff contends that the legislature's failure to amend the direct action provision to override the NJDEP's interpretation gives rise to an "infer[ence] ... that the Legislature approved of the DEP's interpretation ..." *GATX Terminals Corp. v. DEP*, 86 N.J. 46, 53, 429 A.2d 355 (1981).

As part of the 1990 amendments, the legislature added section 58:10–23.11d5, which requires owners and operators of "major facilities" to provide "evidence of financial responsibility" to the NJDEP. Additionally, section 58:10–23.11d5 directs the NJDEP to adopt regulations to establish the "amount, nature, terms and conditions" by which major facilities are to provide evidence of financial responsibility.

Pursuant to section 58:10–23.11d5, the NJDEP promulgated regulations which recognized several methods of providing the required evidencing financial responsibility, including: "(1) Financial test of self-insurance; (2) Guarantee; (3) Insurance or risk retention group coverage; (4) Surety bond; or (5) Letter of Credit." N.J.A.C. § 7:1E4.5d (1991). Moreover, "to demonstrate evidence of financial responsibility through liability insurance," the NJDEP requires that the policy must contain a specific endorsement by the insurer, stating that the policy is intended to cover the cost of corrective action to remedy a spill at a particular "major facility." N.J.A.C. § 7:1E4.51(2) (1991).

Rather than suggesting that the Spill Act authorizes a direct action against any insurer of an alleged polluter, the 1990 amendments support Defendants' contention that the terms "bond" and "insurer" in section 58:10–23.11s are categories of "evidence of financial responsibility." Under the NJDEP regulations, both bonds and insurance are acceptable methods for demonstrating financial responsibility as required under the Spill Act. N.J.A.C. § 7:1E4.5d.

Additionally, the general principle of statutory construction, that courts should interpret statutes so that no terms constitute surplusage, weighs in favor of interpreting section 58:10–23.11s to authorize direct actions only against insurers of major facilities

---

**3.** The NJDEP was formerly called the New Jersey Department of Environmental Protection and Energy or NJDEPE. For convenience, this Court will refer to the NJDEP by its current name.

that have provided evidence of financial responsibility. *See Peper v. Princeton Univ. Bd. of Trustees,* 77 N.J. 55, 389 A.2d 465 (1978). Under Plaintiff's interpretation, § 58:10–23.11s would authorize a direct action against a bond, an insurer, or any person providing evidence of financial responsibility. This interpretation ignores the statute's use of the definitive article "the," which precedes "bond" and "insurer." Furthermore, Plaintiff's interpretation renders the word "other," which refers to a "person providing evidence of financial responsibility," superfluous. In contrast, if "insurer" and "bond" are interpreted as examples of how "evidence of financial responsibility" may be produced, all words in the statute are accorded meaning.

Moreover, the regulations indicate that not all insurance policies are sufficient to demonstrate financial responsibility under the Spill Act. Only those policies that are specifically endorsed by the insurer as providing evidence of financial responsibility under the Spill Act satisfy the statutory requirement. N.J.A.C. § 7:1E4.51(2); N.J.S.A. § 58:10–23.11d5. In contrast to the specifically endorsed insurance policies required to evidence financial responsibility under the Spill Act, the Defendant insurers issued general comprehensive liability policies to Spaulding. *See* N.J.A.C. § 7:1E.4–51(2).

These administrative regulations undermine Plaintiff's contention that in order to effect the remedial purpose of the Spill Act, it should be "liberally construed" to authorize a direct action against any insurer of an alleged polluter. N.J.S.A. § 58:10–23.11x. Instead, the administrative regulations suggest that an insurer is only "responsibil[e]" for pollution by an insured if the insurer has explicitly undertaken this obligation by endorsing its policy to provide Spill Act coverage. N.J.A.C. § 7:1E.4–51(2). In other words, the regulations suggest that unless the insured is a "major facility" that has obtained a policy containing the requisite endorsement, the Spill Act does not authorize a direct action against the insurer by an injured third party.

In conclusion, the Court refuses to accord the NJDEP's interpretation of the direct action provision, as represented by the Hart affidavit, any deference because the language of the statute and the implementing regulations do not support it. Having reviewed the conflicting interpretations of 58:10–23.11s offered by the parties, the Court concludes that the Spill Act does not authorize this direct action by the PRP Group against the Defendant insurers. Accordingly, the Court **dismisses** count six of Plaintiff's Complaint.

*2. Spaulding's Rights Under Its Insurance Policies and the Alleged Assignment of Those Rights to the PRP Group*

In the Amended Stipulation entered in Bankruptcy Court, Spaulding purportedly assigned "any and all choses in action and causes of action arising out of or relating to the Caldwell Trucking site" to the PRP Group. Compl. ¶ 55B, Exh. 1 ¶ 2. This purported assignment serves as the basis for count five of the PRP Group's Complaint, which seeks both declaratory relief and damages. Compl. ¶¶ 63, 64. The Defendant insurers contend that this purported assignment is invalid because it violates the express terms of the insurance contracts issued to Spaulding which: (a) limit the insured's ability to maintain an action against the insurer (an "action against company" provision); and (b) prohibit assignment of an insurance policy to a third party without the insurer's consent (a "no assignment" provision).

■ As a threshold matter, the Court must identify which jurisdiction's law to apply in determining both Spaulding's rights under the policies and the validity of its alleged assignment of those rights to the PRP Group through the Amended Stipulation. When deciding which state's law applies to a particular controversy, a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey follows the choice of law doctrine commonly referred to as "interests analysis," as a method for identifying the jurisdiction with the "most significant relationship" to the controversy. *E.g., State Farm Mut. Ins. v. Estate of Simmons,* 84 N.J. 28, 37, 417 A.2d 488 (1980). Relevant factors for consideration include the governmental policies underlying the law as well as

parties' factual contacts with each jurisdiction. *Id.*

According to the PRP Group, the validity of an assignment is typically governed by "the law of the place where the assignment is made," which in this case, is California. *See* John Allen Appleman, 2A *Insurance Law and Practice* § 1191 (1966). Plaintiff's choice of law analysis, however, overlooks a critical distinction between the assignment, itself a contract, and the underlying property assigned, the insurance policies, which are also contracts.

■ While the law of the place where the assignment was made might govern interpretation of whether the assignment contract complies with the statute of frauds, for example, the same law does not necessarily govern the determination of whether the assignor possessed legitimately assignable rights. Whether Spaulding possessed transferrable rights under the insurance policies, issued by the Defendant insurers, depends upon an interpretation of the policy contracts, not the assignment contained in the Amended Stipulation. If the policies prohibited Spaulding from assigning its rights under the policies, then the assignment is void, not by its own terms, but because Spaulding did not have any property interest under the policies capable of being transferred.

Applying "interests analysis" in the context of insurance policies, the New Jersey Supreme Court has concluded:

> that when the parties to the insurance contract can reasonably foresee that a New Jersey waste site will receive the insured's waste product, New Jersey law should dictate the proper interpretation of the insuring agreement because this state ha[s] the dominant significant relationship.

*Gilbert Spruance Co. v. Pennsylvania Manufacturers' Assoc. Ins. Co.*, 134 N.J. 96, 98, 629 A.2d 885 (1993). The Defendant insurers apparently do not contest the applicability of New Jersey law to this Court's interpretation of the policies because their briefs rely upon New Jersey cases. Therefore, New Jersey law provides the binding authority for this Court's interpretation of the insurance policies issued by the Defendant insurers to Spaulding.

The PRP Group concedes that its "right, as Spaulding's assignee, is derivative and can rise no higher than those which the assignor possessed." Pl.Br. at 31 (citing *Fireman's Fund Ins. Co. v. Security Ins. Co.*, 72 N.J. 63, 68 n. 1, 367 A.2d 864 (1976)). For this reason, the Court's analysis appropriately begins by examining Spaulding's rights under the policies issued by the Defendant insurers.

Given the number of policies and insurers involved, this Court faced a substantial task in determining Spaulding's rights. Defendants' manner of filing their motions and supporting documentation aggravated this problem. Liberty and Wausau, the only Defendants that filed briefs in support of these motions to dismiss, attached sample policies, containing the relevant "action against company" and "no assignment" provisions. Several of the remaining Defendant insurers, which joined in Liberty and Wausau's motions, did not submit either sample policies or certifications indicating that their policies issued to Spaulding contained similar relevant provisions. At oral argument, the Court expressed its concern that it had not been provided with all of the relevant policies to review.

To insure that any decision rendered by this Court based upon the language of the policies issued to Spaulding would apply to all of the Defendant insurers, this Court directed the parties to conduct a review of the policies and to inform the Court, within two weeks, which policies were at issue and whether the language of these policies differed in any relevant respects. The parties have subsequently indicated that all of those policies contain substantially similar "action against company" and "non-assignment" provisions.

### a. "Action Against Company" Provisions of the Policies

The terms of the insurance policies issued by the Defendants to Spaulding place two significant limitations upon Spaulding's right, as the insured, to maintain a legal action against its insurers. First, the policies provide that: "No action shall lie against the

company [the insurer] ... until the amount of the insured's liability has been determined either by judgment against the insureds after actual trial or by written agreement of the insured, the claimant and the company." *E.g.,* Wausau Br.Exh. B, Liberty Br.Exh. 1. Second, the policies further provide that: "No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured." *E.g.,* Wausau Br.Exh. B, Liberty Br.Exh. 1. The Defendant insurers contend that these express limitations preclude both Spaulding, and the PRP Group, as its alleged assignee, from pursuing claims against them in this action, where Spaulding's underlying liability, if any, will be determined.

■ With respect to the first limitation, no final judgment has been entered against Spaulding and in favor of the PRP Group. Neither a trial on the merits nor a settlement, agreed to by the Defendant insurers, has occurred.

According to Liberty, entry of a final judgment against Spaulding is a condition precedent to Spaulding's ability to pursue claims against its insurers for both damages and declaratory relief. In support of this position, Liberty relies upon *Batsakis v. Federal Deposit Insurance Corp.,* 670 F.Supp. 749, 759 (W.D.Mich.1987). Relying upon Michigan law, the *Batsakis* court adopted a "plain language approach" to an action against company provision, similar to that contained in the Defendants' policies, and refused to create an exception permitting an insured to pursue a declaratory judgment action before entry of final judgment. *Batsakis,* however, does not accurately reflect New Jersey law.

■ As interpreted by New Jersey courts, the effect of an action against company clause requiring a final judgment or settlement varies depending upon whether the plaintiff is seeking damages or declaratory relief from the insurer. Where an insured pursues an action for damages against its insurer and the policy requires a final judgment or settlement before the insurer can be sued, the insurer can defeat the action based upon the insured's failure to satisfy this con-

dition precedent. *Bacon v. American Ins. Co.,* 131 N.J.Super. 450, 457, 330 A.2d 389 (Law Div.1974), *aff'd.* 138 N.J.Super. 550, 351 A.2d 771 (App.Div.1976) (per curiam).

In contrast, the final judgment or settlement requirement does not preclude an insured from seeking a declaration of the insurer's duty to provide coverage and a defense before a judgment is entered against the insured. *E.g., Condenser Service & Engineering Co., Inc. v. American Mutual Liability Ins. Co.,* 45 N.J.Super. 31, 41, 131 A.2d 409 (App.Div.1957), *certif. denied,* 24 N.J. 547, 133 A.2d 395 (1957); *LeFelt v. Nasarow,* 71 N.J.Super. 538, 543, 177 A.2d 315 (Law Div.1962), *aff'd,* 76 N.J.Super. 576, 185 A.2d 217 (App.Div.1962), *certif. denied,* 39 N.J. 86, 187 A.2d 600 (1963); *Kielb v. Couch,* 149 N.J.Super. 522, 528, 374 A.2d 79 (Law Div. 1977).

As interpreted by New Jersey Courts, an action against company provision requiring entry of a final judgment or settlement before the insurer can be sued "was never intended to serve, nor can it be construed to serve, the purpose of avoiding a declaration of rights when the insurer has allegedly repudiated the contract and declined to furnish an agreed defense of a covered damage action." *Condenser,* 45 N.J.Super. at 41, 131 A.2d 409. Action against company provisions, like those contained in Defendants' policies, serve two functions: (a) preventing an injured person from joining the insurer in an action against the insured; and (b) preventing suits by either the injured party or the insured until damages have been fixed by a final judgment. *Id.* Permitting an insured to pursue a declaratory judgment on the issues of coverage and the insurer's duty to defend does not undermine either of these purposes. *Id.* A contrary rule, however, would unnecessarily eviscerate New Jersey's Declaratory Judgments Act in the area of insurance contracts, where "no more fertile ground exists for the use of the declaratory judgment procedure." *Hartford Accident & Indemnity Co. v. Selected Risks Indemnity Co.,* 65 N.J.Super. 328, 332, 167 A.2d 821 (App.Div.1961) (citing *Condenser,* 45 N.J.Super. at 38, 131 A.2d 409).

Moreover, courts applying New Jersey law have permitted an injured third party to seek a declaratory judgment against an insurer in an action where the insured is also a party, but a judgment against the insured has not yet been obtained. *Hub Recycling, Inc. v. Louis Usdin Co., Inc.,* 106 B.R. 372, 376 (D.N.J.1989); *Eschle v. Eastern Freight Ways, Inc.,* 128 N.J.Super. 299, 306–07, 319 A.2d 786 (Law Div.1974); *Miney v. Baum,* 170 N.J.Super. 282, 288, 406 A.2d 234 (Law Div.1979); *see also Manukas,* 98 N.J.Super. at 525, 237 A.2d 898 (suggesting declaratory judgment against insurer as option for plaintiff). Therefore, the first limitation upon Spaulding, the policy provisions requiring a final judgment or settlement prior to initiating an action against the insurers, does not preclude an action for declaratory relief by either Spaulding or the PRP Group, as its assignee.

■ While Spaulding and the PRP Group have provided authority to support their ability to maintain a declaratory judgment against the insurer in spite of the judgment or settlement requirement of the policies, none of the cases cited address the second limitation contained in the policies, the prohibition against joining or impleading the insurers in any action in which the insured's liability will be determined. None of the cases relied upon by the PRP Group and Spaulding mention a "same action" limitation. Neither Spaulding nor the PRP Group has provided this Court with any authority for refusing to enforce the "same action" limitations of the policies issued by the Defendants.

Since the express terms of the policies issued by the Defendants preclude Spaulding from joining the Defendant insurers in this action, where Spaulding's underlying liability will be determined, its Cross–Complaint is **dismissed, without prejudice.** Spaulding may pursue its claims for declaratory relief against the Defendant insurers in a separate action even before a judgment or settlement is entered with respect to Spaulding's liability for the Caldwell site.

■ As Spaulding's alleged assignee, the PRP Group's rights, if any, are derivative and can rise no higher than those which

Spaulding, the assignor, possessed. *See Fireman's Fund Ins. Co.,* 72 N.J. at 68 n. 1, 367 A.2d 864. Under the insurance policies, Spaulding does not have the right to pursue claims for declaratory relief against the insurers in this action; therefore, the PRP Group could not obtain the right to pursue claims for declaratory relief against the Defendant insurers as a result of the alleged assignment. Consequently, count five of the PRP Group's Complaint, which rests upon the validity of the alleged assignment of Spaulding's rights to relief under the policies, must also be dismissed.

#### b. "No Assignment" Provision

■ The question of whether to dismiss count five of the PRP Group's Complaint should be dismissed with or without prejudice remains before the Court. To make this determination, the Court must assess the validity of Spaulding's alleged assignment of its rights under the insurance policies issued by the Defendant insurers to the PRP Group through the Amended Stipulation entered in Bankruptcy Court.

Under the policies issued by the Defendants to Spaulding, the validity of an assignment of any "interest" under the policies is conditioned upon obtaining the insurers' written consent. *E.g.* Wausau Br.Exh. 4 ¶ 8. Since *none* of the insurers consented to Spaulding's purported assignment of its interests under the policies to the PRP Group, the Defendants contend that the assignment is invalid.

■ Under New Jersey law, a party's ability to assign an interest under an insurance contract that contains a "no assignment" provision is unclear. "[G]enerally a chose in action is assignable unless enjoined by the contract out of which it arose." *Chelsea–Wheeler Coal Co. v. Marvin,* 132 N.J.Eq. 462, 28 A.2d 505 (1942); *accord* N.J.S.A. § 2A:25–1 ("all choses in action arising on contract shall be assignable ..."). Even where the assignment is forbidden by the terms of the contract, however, it will not be prohibited unless it violates the "essence of the contract." *Chelsea–Wheeler Coal Co.,* 132 N.J.Eq. at 462, 28 A.2d 505.

Applied in the context of insurance policies, this law governing assignments has yielded the following result:

> An assignment, after the loss has occurred, is not an assignment of the policy, but of the claim for the insurance, and is not within the inhibition of the [no-assignment] clause ...

*Flint Frozen Foods Co. v. Firemen's Ins. Co. of Newark,* 12 N.J.Super. 396, 400, 79 A.2d 739 (Law Div.1951) (citations omitted), *rev'd on other grounds,* 8 N.J. 606, 86 A.2d 673 (N.J.1952); *Atlantic City v. American Casualty Ins. Co.,* 254 F.Supp. 396, 399 (D.N.J. 1966) (permitting assignment of mature claims against the insurer arising from the insurer's alleged breach of its contractual duty to settle); *accord Vierneisel v. Rhode Island Ins. Co.,* 77 Cal.App.2d 229, 175 P.2d 63, 65 (1946). George J. Couch, *Cyclopedia of Insurance Law 2d,* § 63:40 (1983) ("the great weight of authority supports th[is] rule ... assignment before the loss involves a[n impermissible] transfer of a contractual relationship while the assignment after loss is the [permissible] transfer of a right to a money claim.").

The parties hotly contest whether a loss has "occurred" to permit assignment of Spaulding's rights, if any, to damages from the Defendant insurers. The PRP Group argues that a loss covered by the policies has occurred because all of the events giving rise to Spaulding's claims against the insurers for: (1) indemnification for any liability incurred in connection with the Caldwell Trucking site; and (2) breach of contract caused by the Defendant insurers' refusal to consent to the assignment as a matter of business policy, have already occurred. In contrast, the Defendant insurers argue that their liability is not "fixed" because there has been no judgment or settlement entered against Spaulding. *See Bacon,* 131 N.J.Super. at 457, 330 A.2d 389.

In fact, the Court need not resolve the issue of whether a "covered loss" has occurred to reach the conclusion that Spaulding's alleged assignment of its rights to the PRP Group through the Amended Stipulation is invalid. Rather, Spaulding's financial stake in any net recovery by the PRP Group

from the Defendant insurers in excess of $1 million, an interest which increases from 5–10%, depending upon the amount of the recovery, violates the "essence of the contract[s]" between Spaulding and the Defendant insurers. *See Chelsea–Wheeler Coal Co.,* 132 N.J.Eq. at 462, 28 A.2d 505; Compl. Exh. 1 ¶ 12.

Under the terms of the alleged assignment, embodied in the Amended Stipulation, Spaulding has an incentive to maximize the PRP Group's recovery against the Defendant insurers. If the PRP recovers $1 million or less from the insurers, then Spaulding gets nothing. Compl.Exh. 1 ¶ 12. Spaulding would receive 5% of any net recovery by the PRP Group between $1 million and $3.5 million, or 10% of any net recovery above $3.5 million. Compl.Exh. 1 ¶ 12b. The financial incentive for Spaulding to maximize the PRP Group's recovery is inconsistent with Spaulding's obligation, which it assumed under the policies issued by the Defendant insurers, to cooperate in its own defense.

In an attempt to avoid having the alleged assignment contained in the Amended Stipulation invalidated, Spaulding and the PRP Group assert that this Court can implement protective measures to ensure that there is no inappropriate collusion between Spaulding and the PRP Group. Specifically, Spaulding and the PRP Group contend that the insurers may challenge the reasonableness of any settlement entered into by the PRP Group and Spaulding. While this approach might be feasible if the parties are able to settle their claims, Spaulding and the PRP Group do not offer this Court any guidance on how to proceed if this case ever goes to trial before a jury, as the parties have requested. The Court would be faced with the extremely difficult task of identifying when and where Spaulding, potentially motivated by the prospect of financial gain, acted as a less than enthusiastic participant in defending against the PRP Group's claims at a trial on the merits.

Alternatively, Spaulding and the PRP Group argue that any incentive for Spaulding to maximize the PRP Group's recovery is negated by the risk of increasing the allowable claim against Spaulding's bankrupt es-

tate from $1 to $3.2 million if no recovery is obtained from the Defendant insurers. Compl.Exh. 1 ¶¶ 6, 7, 9. Since Spaulding is bankrupt, and any judgment against it will result in an unsecured, non-priority claim, this risk is simply insufficient to negate the conflict of interest that is apparent from the face of the assignment itself.

Under these circumstances, there is no need, as Spaulding and the PRP Group contend, to await evidence of collusion before invalidating either the assignment or a future settlement between Spaulding and the PRP Group. Spaulding's obligation under the insurance policies, to cooperate in its defense, and its financial stake in the PRP Group's recovery, accorded under the Amended Stipulation, are fundamentally inconsistent. *See Chelsea–Wheeler Coal Co.*, 132 N.J.Eq. at 462, 28 A.2d 505; *cf. Hitt v. Cox*, 737 F.2d 421, 426 (4th Cir.1984) (holding that conditional settlement whereby injured party agreed to pay an additional $150,000 in damages if insurers were held obligated to indemnify found invalid because "the negotiating parties no longer ha[d] adverse interests and their settlement is presumptively unreasonable."). As a result, Spaulding's alleged assignment of its rights under the insurance policies to the PRP Group is invalid. *See Chelsea–Wheeler Coal Co.*, 132 N.J.Eq. at 462, 28 A.2d 505.

For this reason, count five of the PRP Group's Complaint, which relies upon the alleged assignment to authorize its direct action against the Defendant insurers, is **dismissed, with prejudice.**

### *3. Defendants' Remaining Motions*

Since all of the claims asserted against the Defendant insurers by both the PRP Group and Spaulding have been dismissed, Defendants' remaining motions to dismiss the Cross–Complaint for forum non conveniens, to transfer this action to the Western District of New York, and to dismiss those claims asserted by Spaulding related to contamination at a site in Tonawanda, New York, for improper joinder under Federal Rule of Civil Procedure 13(g), are **denied** as moot.

## III. *CONCLUSION*

For the reasons set forth in this Opinion, the motions to dismiss counts five and six of Plaintiff's Complaint, filed by Defendants, Liberty, Wausau, American Centennial, American Home, Lexington, National Union, New England, Industrial Underwriters, Lloyd's, London Market, and Allstate are **granted.** Defendant, Aetna's motion to dismiss is **denied** as moot because this Court awarded summary judgment in favor of Aetna on March 17, 1995.

The motions to dismiss the Complaint under the doctrine of forum non conveniens filed by several Defendants are **denied.** Similarly, Defendants' motions to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of New York are also **denied.**

Defendants Wausau, Liberty, New England, American Home, Industrial Underwriters, American Centennial, Lloyd's, London Market, and Allstate's motions to dismiss the Cross–Complaint filed by Spaulding are **granted.** As a result, the motions to dismiss those claims asserted by Spaulding related to contamination at a site in Tonawanda, New York, for improper joinder under Federal Rule of Civil Procedure 13(g) filed by these Defendants are **denied.** The motions to transfer this action to the Western District of New York made in connection with the motion to dismiss the Cross–Complaint are also **denied.**

Once again, Aetna's motions to dismiss and to transfer are **denied** as moot in light of this Court's summary judgment award in Aetna's favor.

### *JUDGMENT ORDER*

This matter having come before the Court on numerous motions by the Defendants; and

The Court having considered the submissions as well as the oral arguments of counsel on behalf of the parties; and

For the reasons set forth in the Court's Opinion filed this day; and

For good cause shown;

It is on this 12th day of July, 1995 ORDERED as follows:

1. All motions filed by Defendant, Aetna Casualty & Surety Company ("Aetna"), are **denied** as moot in light of this Court's summary judgment award in favor of Aetna, embodied in an Order, filed March 17, 1995;

2. The motions by Defendants, Liberty Mutual Insurance Company ("Liberty"), Employers Insurance of Wausau ("Wausau"), American Centennial Insurance Company ("American Centennial"), American Home Assurance Company ("American Home"), Lexington Insurance Company ("Lexington"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), New England Insurance Company ("New England"), Industrial Underwriters Insurance Company ("Industrial Underwriters"), Certain Underwriters at Lloyd's, London ("Lloyd's"), Certain London Market Insurance Companies ("London Market"), and Allstate Insurance Company ("Allstate"), to dismiss counts **five** and **six** of the **Complaint** for failure to state a claim are **granted;**

3. The motions filed by several of these Defendants to dismiss the Complaint under the doctrine of forum non conveniens or alternatively, to transfer this action to the United States District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a), are **denied.**

4. The motions to dismiss the **Cross-Claim** of Defendant, Spaulding Composites, Co., Inc., under Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Wausau, Liberty, New England, American Home, Industrial Underwriters, American Centennial, Lloyd's, London Market and Allstate Inc., are **granted.**

5. The motions filed by several of these Defendants to dismiss those claims asserted by Spaulding related to contamination at a site in Tonawanda, New York, for improper joinder under Federal Rule of Civil Procedure 13(g) are **denied.**

6. The motions to transfer this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a) made in connection with the motion to dismiss the Cross-Complaint are also **denied.**